**2019 UT App 76**

# THE UTAH COURT OF APPEALS

GROVE BUSINESS PARK LC,
Appellee,
*v.*
SEALSOURCE INTERNATIONAL LLC,
Appellant.

Opinion
No. 20170015-CA
Filed May 9, 2019

Fourth District Court, Provo Department
The Honorable M. James Brady
No. 130401429

Mark A. Nickel, Joseph Z. Alisa, and Stacy J.
McNeill, Attorneys for Appellant

Ryan B. Hancey, Attorney for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES KATE APPLEBY and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1 Sealsource International LLC (Tenant) leased commercial property from Grove Business Park LC (Landlord). After dealing with a noisy neighbor and other problems with the premises, Tenant moved out before the expiration of the parties' lease agreement (the Lease). Landlord sued Tenant, claiming that Tenant breached the Lease when it vacated the premises early. Tenant denied liability for breach, asserting that Landlord first breached the Lease by constructively evicting it from the premises when Landlord breached the covenant of quiet enjoyment. Tenant also asserted that before it vacated the premises, Landlord breached the warranty of suitability.

¶2 After the district court granted partial summary judgment to Landlord regarding four of Tenant's complaints about the premises, the case proceeded to trial. The jury found in favor of Landlord, concluding that Landlord did not breach the covenant of quiet enjoyment or the warranty of suitability and that Tenant breached the Lease.

¶3 Tenant now appeals the district court's judgment in favor of Landlord, raising three main issues for our consideration. First, Tenant contends that the district court erred in granting partial summary judgment on four of its complaints about the premises. Second, Tenant contends that the court abused its discretion in excluding evidence at trial that Landlord allegedly promised to address those four complaints. Third, Tenant contends that the court erred in awarding attorney fees to Landlord. We affirm.


BACKGROUND

¶4 In September 2011, Tenant leased a commercial property from Landlord for a term of five years and eight months. Soon after moving in, Tenant discovered that the abutting neighbor was a dance studio and that loud music from the studio interfered with its business. Tenant complained to Landlord about the loud music, and it also complained to Landlord about other perceived problems with the premises. When the noise and other issues continued, Tenant vacated the premises in April 2013 even though more than four years remained on the Lease.

¶5 Landlord sued Tenant, claiming that Tenant breached the Lease when it left the premises early. In response to the complaint, Tenant asserted that Landlord had constructively evicted Tenant by failing to address a number of Tenant's complaints about the premises: (1) heating and cooling problems with the HVAC system in Tenant's unit; (2) the front door of Tenant's unit would swing open from wind; (3) the below-standard height of the loading dock; (4) inadequate parking for

Tenant and its customers; (5) pervasive insect problems; (6) unmaintained parking and common areas; and (7) noise emanating from the dance studio.[1]

¶6    Landlord moved for partial summary judgment on Tenant's counterclaims to the extent they were based on the first four of these complaints: the HVAC, the front door, the loading dock, and the inadequate parking (collectively, the Four Alleged Defects). According to Landlord, it had no obligation under the Lease to remedy those specific complaints. The district court agreed and granted partial summary judgment in favor of Landlord. It ruled that Tenant's "counterclaims for quiet enjoyment and warranty of suitability, to the extent they concern [the Four Alleged Defects were] dismissed with prejudice and on the merits."

¶7    Before trial, and in light of the district court's ruling that Landlord had no obligation to fix the Four Alleged Defects, Landlord moved to exclude from trial emails with unredacted references to the Four Alleged Defects. Landlord asserted that, under rule 403 of the Utah Rules of Evidence, that evidence would unfairly prejudice Landlord by exposing the jury to "what appear[ed] to be facts of [Landlord] not doing something that, in fact, it didn't have to do under the [Lease]." Tenant opposed the motion, asserting that its evidence regarding the Four Alleged Defects—including emails in which Landlord allegedly told Tenant that it would fix those problems, as well as Landlord's internal emails wherein Landlord mentioned its efforts to address Tenant's complaints—was relevant to its theory of constructive eviction because it showed Landlord's pattern of stalling, which allegedly induced Tenant to stay longer in the premises than it otherwise would have. The court

---

1. Tenant made these assertions in support of its counterclaims, styled as breach of the covenant of quiet enjoyment and breach of the warranty of suitability, and in defense to Landlord's claim for breach of contract.

granted Landlord's motion, stating that it would not admit evidence regarding the Four Alleged Defects "when it's contrary to the summary judgment ruling."

¶8   The case proceeded to a five-day jury trial. Landlord sought approximately $40,000 from Tenant for unpaid rent; Tenant sought $300,000 from Landlord for alleged lost profits and other losses arising from Landlord's alleged breaches of the covenant of quiet enjoyment and the warranty of suitability. As a result of the court's partial summary judgment ruling and evidentiary decision, Tenant's constructive eviction theory at trial was based only on Landlord's alleged failures to fix the insect and noise problems and to maintain the parking and common areas.

¶9   The jury returned a verdict in favor of Landlord. On the special verdict form, the jury indicated it found that Landlord did not breach the covenant of quiet enjoyment by constructively evicting Tenant and that Landlord did not breach the warranty of suitability. Rather, the jury found that Tenant breached the Lease by vacating the premises early and awarded $14,452.14 in damages to Landlord.

¶10   Landlord moved for an award of attorney fees on the ground that it was entitled to fees under the terms of the Lease. The district court granted Landlord's motion, concluding that Landlord was the prevailing party and that its incurred fees, with a few exceptions, were reasonable. Accordingly, the district court awarded attorney fees and costs to Landlord in the amount of $124,429.97, and it entered a judgment against Tenant in the total amount of $138,882.11. Tenant appeals.

ISSUES AND STANDARDS OF REVIEW

¶11   Tenant advances three main challenges on appeal. First, Tenant contends that the district court erred in granting partial summary judgment on its claims as they related to the Four

Alleged Defects. A motion for summary judgment shall be granted "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "In reviewing a trial court's grant of summary judgment, we consider only whether it correctly applied the law and correctly concluded that no disputed issues of material fact existed." *Pigs Gun Club, Inc. v. Sanpete County*, 2002 UT 17, ¶ 7, 42 P.3d 379 (cleaned up). "In so doing, we view all facts and reasonable inferences drawn therefrom in a light most favorable to the nonmoving party." *Id.* Similarly, questions of contract interpretation that "are confined to the language of the contract itself are questions of law, which we review for correctness." *iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 30, 424 P.3d 970 (cleaned up).

¶12 Second, Tenant contends that the district court abused its discretion in excluding evidence referring to the Four Alleged Defects. When reviewing a district court's exclusion of evidence, we grant the court "broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion." *Daines v. Vincent*, 2008 UT 51, ¶ 21, 190 P.3d 1269. But "error in the district court's evidentiary rulings will result in reversal only if the error is harmful." *Anderson v. Larry H. Miller Commc'ns Corp.*, 2015 UT App 134, ¶ 17, 351 P.3d 832.

¶13 Third, Tenant contends that the district court erred in awarding attorney fees to Landlord, attacking its determinations that Landlord was the prevailing party and that the amount of Landlord's claimed fees was reasonable. We review the district court's "determination as to who was the prevailing party under an abuse of discretion standard." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119. Likewise, the district court "has broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard." *Dixie State Bank v. Bracken*, 764 P.2d 985, 991 (Utah 1988).

ANALYSIS

I.  The Partial Summary Judgment Ruling

¶14     Tenant first challenges the district court's grant of partial summary judgment to Landlord on Tenant's claims for breach of the covenant of quiet enjoyment and breach of the warranty of suitability. Tenant asserts that the premises had the Four Alleged Defects, which it believes Landlord was obliged to remedy. In Tenant's view, Landlord was obligated to make the repairs pursuant to the Lease and, at a minimum, the jury should have been allowed to decide whether Landlord was required to fix any of the Four Alleged Defects.

¶15     Landlord responds that because it "had no obligation to address the Four Alleged Defects," it was not in breach and the district court correctly granted summary judgment. According to Landlord, "the Four Alleged Defects do not fall within the plain language of [the] limited repair obligation" contained in the Lease, and therefore it "could not be held liable for failure to address" them.

¶16     Before reaching the specific arguments of the parties, we note that in challenging the district court's grant of partial summary judgment, Tenant does not engage with the nature of, or the particular protections afforded by, its affirmative claims for breach of the covenant of quiet enjoyment and breach of the warranty of suitability. But because Tenant's arguments focus on whether the Lease, or modifications of the Lease, expressly required Landlord to repair the Four Alleged Defects,[2] we likewise focus on the Lease to resolve its challenge to the district court's summary judgment decision.

---

2. This focus may be because the Lease itself includes a "Quiet Enjoyment" provision, which states that "Tenant shall quietly enjoy the Premises, *subject, however, to the terms of this Lease*." (Emphasis added.)

¶17    In turning our attention to the terms of the Lease, we employ the rules for contract interpretation. Those rules require that "we first look to the writing alone to determine its meaning and the intent of the contracting parties." *Skolnick v. Exodus Healthcare Network, PLLC*, 2018 UT App 209, ¶ 14, 437 P.3d 584 (cleaned up). "If the language is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* (cleaned up). "A contractual term is ambiguous if, looking to the language of the contract alone, it is reasonably capable of being understood in more than one way such that there are tenable positions on both sides."[3] *Id.* (cleaned up); *see also Brodkin v. Tuhaye Golf, LLC*, 2015 UT App 165, ¶ 21, 355 P.3d 224 ("[E]xtrinsic evidence cannot be used to create an ambiguity not reasonably supported by the text of the contract." (citing *Daines v. Vincent*, 2008 UT 51, ¶ 27, 190 P.3d 1269)). "But terms are not ambiguous simply because one party seeks to endow them with a different interpretation according to [its] own interests." *Skolnick*, 2018 UT App 209, ¶ 14 (cleaned up).

¶18    The pertinent provisions of the Lease are as follows. Paragraph 6 states that "Tenant accepts the Premises in the condition they are in at the inception of this Lease." Paragraph 8 states that Tenant agrees "to pay for all labor, materials and other repairs to the . . . heating and air conditioning systems in or serving the Premises." And Paragraph 9 states:

---

3. "If a contract contains no ambiguity, the court will not consider extrinsic evidence and will enforce the contract according to its terms." *Brodkin v. Tuhaye Golf, LLC*, 2015 UT App 165, ¶ 18, 355 P.3d 224 (cleaned up). But "if a party contends that an apparently unambiguous contract contains a latent ambiguity," as opposed to a facial ambiguity, "the court will consider extrinsic evidence to determine whether the contract contains a latent ambiguity." *Id.* ¶ 20. Tenant has not contended that a latent ambiguity exists in the Lease.

> Landlord agrees for the term of this Lease, to maintain in good condition and repair any latent defects in the exterior walls, floor joists, and foundations of the building in which the Premises is located, and to repair any defects in the plumbing and electrical lines, facilities and equipment in the common areas, (subject to the provisions of paragraph 3(b)), for one year after date of occupancy, as well as any damage that might result from acts of Landlord or Landlord's representatives. Landlord shall not, however, be obligated to repair any such damage until written notice of the need of repair shall have been given to Landlord by Tenant and, after such notice is so given, Landlord shall have a reasonable time in which to make such repairs.

¶19 We begin by addressing Tenant's argument that the district court should have allowed the jury to decide the meaning of the Lease's terms. We then address each of the Four Alleged Defects. Finally, we address Tenant's arguments regarding the doctrines of waiver, estoppel, and unclean hands.

A.      Whether the Jury Should Have Decided the Meaning of the Lease

¶20 Tenant argues that Landlord "was obligated to make the subject repairs" pursuant to the Lease. Invoking Paragraph 9 of the Lease, Tenant argues that the issues it complained of "were latent defects (either because the defect existed prior to the Lease or the defect was caused by 'acts of Landlord or Landlord's representatives'), or [Landlord] otherwise promised to remediate the issue." According to Tenant, whether any of the Four Alleged Defects "was 'latent' or a 'defect' should have been left to the jury." It claims that "[t]he parties understood 'latent defect' to include issues that arose within the first year of the Lease." Further, "[Landlord's] [various] representations that it

was addressing the [Four Alleged Defects] is evidence proving the defects fall under Paragraph 9 of the Lease, meaning the jury should have resolved that factual dispute—not the trial court."

¶21 We conclude that Tenant has not shown that there was a factual question for the jury. It is well established that when contractual terms are unambiguous, the court determines the parties' intentions "from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Skolnick*, 2018 UT App 209, ¶ 14 (cleaned up). Tenant makes no effort on appeal, nor did it before the district court, to show that the Lease's terms are ambiguous—that is, "capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Daines*, 2008 UT 51, ¶ 25 (cleaned up). Had the Lease's terms been facially ambiguous as a matter of law, the parties' intent would be a question of fact for the jury. *See Blosch v. Natixis Real Estate Capital, Inc.*, 2013 UT App 214, ¶ 22, 311 P.3d 1042. But because Tenant has not established any ambiguity in the Lease's terms, it also has not shown that the district court erred in interpreting the Lease as a matter of law.

B. The Four Alleged Defects

1. The HVAC System

¶22 Tenant argues that the district court erred in dismissing the portion of its claims based on its contention that Landlord failed to fix heating and cooling problems in the HVAC system, maintaining its position that the HVAC was part of Landlord's repair obligations under Paragraph 9 of the Lease. Tenant also suggests that "material facts were in dispute" including "whether the HVAC issues were caused by [Landlord] and/or [Tenant], and whether based on the course and scope of [Landlord's] dealings it was obligated to repair the HVAC." In other words, Tenant suggests that the HVAC problems might have qualified as "damage . . . result[ing] from acts of Landlord" that Landlord had an obligation to repair under Paragraph 9 or

that Landlord modified the Lease by assuming the obligation to repair the HVAC. In granting summary judgment on this claim, the district court adopted Landlord's reasoning, namely, that Tenant's claim failed as a matter of law because the Lease obligated Tenant, not Landlord, to make the HVAC repairs.

¶23    Tenant has not shown error in the district court's decision. Paragraph 8 states that *Tenant* agrees "to pay for all labor, materials and other *repairs to the . . . heating and air conditioning systems* in or serving the Premises." (Emphasis added.) Under Paragraph 8's unambiguous language, the obligation to pay for repairs to the HVAC system fell on Tenant, not Landlord. Yet Tenant ignores this language and argues that Paragraph 9 covers the HVAC system in Tenant's unit. It does not. The plain language of Paragraph 9 limited Landlord's repair obligations to latent defects in "the exterior walls, floor joists," and building foundations; and to "defects in the plumbing and electrical lines, facilities and equipment in the common areas." The HVAC system in Tenant's unit is not one of the items identified in Paragraph 9. Because Tenant had the obligation to repair the HVAC in accordance with Paragraph 8, the district court correctly ruled that Tenant could not maintain a claim related to the HVAC against Landlord.

¶24    As for Tenant's argument that disputed material facts exist with regard to whether Landlord caused the HVAC problems, the issue is not preserved for appeal. "When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." *Warrick v. Property Reserve Inc.*, 2018 UT App 197, ¶ 12, 437 P.3d 439 (cleaned up). "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *Id.* (cleaned up). In opposing Landlord's motion for summary judgment on the HVAC problems, Tenant never asserted that Landlord was liable under Paragraph 9 because Landlord damaged the HVAC. As a result,

Tenant did not give the district court an opportunity to rule on the issue and did not preserve it for our review.

¶25  Tenant also suggests that disputed facts exist about whether, "based on the course and scope of [Landlord's dealings]," Landlord assumed an obligation to repair the HVAC. The Utah Rules of Appellate Procedure require an appellant's brief to "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8). This requirement means that a "party must cite the legal authority on which its argument is based and then provide reasoned analysis of how that authority should apply in the particular case, including citations to the record where appropriate." *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 13, 391 P.3d 196. "An appellant that fails to devote adequate attention to an issue is almost certainly going to fail to meet its burden of persuasion." *Id.* Here, Tenant's brief does not contain any citations to legal authority or reasoned analysis in support of its assertion that Landlord assumed obligations related to the HVAC. Tenant therefore has not carried its burden of persuasion regarding the HVAC problems.[4]

2.    The Front Door

¶26  Tenant contends that the district court erred in dismissing the portion of its claims relating to the broken front door. Tenant argues that Landlord was obligated to make the repair because Landlord allegedly promised to fix the front door and because Landlord attempted to repair it and "made the problem worse (thereby owning the problem)." In granting summary judgment

---

4. Tenant also contends that Landlord was obligated to repair the HVAC because Landlord replaced the HVAC in a neighboring unit that involved a comparable lease. But we agree with Landlord that even if Landlord fixed another tenant's HVAC, that fact alone does not establish the rights and obligations as between Landlord and Tenant.

regarding the front door, the district court accepted Landlord's reasoning that, per the Lease, Landlord was not required to repair and maintain the front door.

¶27   Instead of attacking the district court's interpretation of the Lease, Tenant asserts—without citing authority—that "it is axiomatic that [Landlord] became responsible for repairing the door once it undertook efforts to do so, continued to promise to do so, and never represented to [Tenant] that it *was not* obligated to repair the door." Because Tenant has not provided legal authority and reasoned analysis based on that authority in support of this argument, Tenant has not devoted adequate attention to the issue and thus has not met its burden of persuasion on appeal. *See id.* And Tenant's unsupported position on appeal that Landlord "made the problem worse" is belied by its position at the summary judgment hearing when Tenant's counsel stated, "They've sent a maintenance guy in there to fix a door. . . . *[W]e don't know whether he made it worse*. It didn't work from that night out. They've now taken on that obligation to fix that." (Emphasis added.) Tenant thus has not shown that there is a factual question about whether Landlord damaged the front door such that it was obligated to fix it. Accordingly, Tenant has not demonstrated that the district court erred in granting summary judgment to Landlord on this claim.

3.     The Loading Dock

¶28   Tenant contends that the district court erred in dismissing its claim that Landlord failed to fix the shorter-than-standard loading dock. The district court granted summary judgment on the loading-dock claim because Landlord had "no Lease-related obligation respecting the warehouse dock" and because Tenant had agreed to accept the premises, including the height of the loading dock, in the condition they were in at the inception of the Lease.

¶29   Tenant contends that the loading dock height falls within the definition of a latent defect in the exterior walls or the

foundations of the building, or even a defect in part of the "common areas" of the building, obligating Landlord to fix the dock pursuant to Paragraph 9 of the Lease. But Tenant does not undertake a meaningful analysis to show why it should prevail in this regard. Tenant does not engage with the language of Paragraph 9 and explain why the district court erred in concluding that the loading dock was not a "defect" within the meaning of the Lease. *See Adamson*, 2017 UT 2, ¶ 13 (explaining that an "appellant that fails to devote adequate attention to an issue is almost certainly going to fail to meet its burden of persuasion").

¶30 And, to the extent Tenant contends that the "irregular dock height defect could possibly fall within the Lease's catch-all" of any damage that might result from acts of Landlord, Tenant has not rebutted Landlord's argument that because Landlord "did not modify or otherwise act respecting the warehouse dock" while Tenant occupied the premises, the warehouse dock height could not constitute "damage that . . . result[ed] from acts of Landlord."

¶31 Further, and perhaps most importantly, the Lease provides, "Tenant accepts the Premises in the condition they are in at the inception of this Lease." Tenant asserts that this provision does not bar its loading-dock claim against Landlord for three reasons: (1) Landlord and its property manager "were better situated and had expertise that [Tenant] lacked" and therefore Tenant "cannot be expected to uncover each and every latent defect"; (2) "whether [Tenant] should have been able to uncover [the irregular loading dock height] is a question of fact precluding summary judgment"; and (3) "[Landlord] failed to explain why it was unreasonable for [Tenant] to assume that [the] loading dock was built to industry standard loading dock heights." But because Tenant did not raise any of these three arguments in opposing Landlord's summary judgment motion, Tenant did not give the district court an opportunity to rule on them and therefore did not preserve them for appeal. *See Warrick v. Property Reserve Inc.*, 2018 UT App 197, ¶ 12, 437 P.3d 439. In

short, Tenant has not shown error in the district court's grant of summary judgment on its loading-dock claim.

4.      Parking

¶32     Tenant argues that the district court erred in dismissing the portion of its claims based on its contention that Landlord failed to provide adequate parking for Tenant and its customers. The Lease provides, "Tenant shall have the right to use the common areas and parking areas jointly with any other tenants of the building; however, this right shall be subject to the exclusive control and management of the Landlord. Landlord shall have the right from time to time to establish and modify and enforce reasonable rules and regulations with respect to parking." In granting summary judgment regarding the parking issue, the district court ruled that the Lease entitled Tenant to joint use of parking spaces around the building but that the Lease did not entitle Tenant or its customers to exclusive use of any parking spaces.

¶33     On appeal, Tenant relies on a letter from Landlord, dated before the parties entered the Lease, in which Landlord states that "Tenant shall be entitled to use not more than 8 onsite dedicated parking stalls in front of the office." Landlord responds that the letter expressly states that it "is not an Agreement" and because the letter predates the Lease, its use is barred by the Lease's integration clause, which states, "This Lease constitutes the entire agreement and understanding between the parties hereto and supersedes all prior discussions, understandings and agreements." *See generally Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 12, 182 P.3d 326 (explaining that "when parties have reduced to writing what appears to be a complete and certain agreement, it will be conclusively presumed, in the absence of fraud, that the writing contains the whole of the agreement between the parties" (cleaned up)). In its reply brief, Tenant concedes that Landlord "correctly argues that this prior statement is seemingly inconsistent with the Lease, and may be excluded by the parol evidence rule."

¶34    Notwithstanding this concession, Tenant seems to suggest that the Lease's phrase "Landlord shall have the right . . . to establish . . . reasonable rules and regulations with respect to parking" incorporated by reference the pre-lease letter's "rule" that "[Tenant] shall be entitled to use not more than 8 onsite dedicated parking stalls." "[P]arties may incorporate the terms of another document by reference into their contract" if they do so with specific language; "the reference must be clear and unequivocal." *Housing Auth. of County of Salt Lake v. Snyder*, 2002 UT 28, ¶ 19, 44 P.3d 724 (cleaned up); *Northgate Village Dev., LC v. Orem City*, 2014 UT App 86, ¶ 26, 325 P.3d 123 (same). Here, Tenant does not provide legal support regarding incorporation by reference, let alone show that the Lease's language is specific enough to clearly and unequivocally incorporate the pre-lease letter's term regarding dedicated parking. By our reading, the Lease makes no mention of the pre-lease letter. The district court therefore correctly ruled that the Lease did not require Landlord to provide dedicated parking spaces for Tenant.

¶35    Tenant then relies on post-lease communications as evidence of "a material factual dispute about the parties' intent relative to guaranteed parking," which it argues should have precluded summary judgment. But because Tenant has not shown that the Lease's plain language regarding parking was ambiguous, the district court correctly interpreted the Lease as a matter of law. *See Skolnick v. Exodus Healthcare Network, PLLC*, 2018 UT App 209, ¶ 14, 437 P.3d 584 ("If the language is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." (cleaned up)); *Blosch v. Natixis Real Estate Capital, Inc.*, 2013 UT App 214, ¶ 22, 311 P.3d 1042 ("It is well established that before the trial court may consider extrinsic evidence of the parties' intent it must first conclude that the contract is facially ambiguous." (cleaned up)). Tenant therefore has not shown error in the district court's summary judgment ruling regarding the parking issue.

## C.      Waiver, Estoppel, and Unclean Hands

¶36      Finally, Tenant asserts that Landlord "waived its right to, or should have been equitably estopped from arguing that it had no responsibility pursuant to the Lease to make said repairs." Tenant also suggests that the doctrine of unclean hands should apply to Landlord and require Landlord to make the repairs at issue. Landlord counters that these legal theories are not preserved for appeal. In response, Tenant asserts that "specific language is not required" to preserve these issues and "presenting the trial court with an argument based on facts and legal theory is sufficient" for preservation purposes.

¶37      While it is true that "[w]hether a party has properly preserved an argument . . . cannot turn on the use of magic words or phrases," *In re Baby Girl T.*, 2012 UT 78, ¶ 38, 298 P.3d 1251, the issue must be "sufficiently raised to a level of consciousness" such that the trial judge can consider it, *Salt Lake City v. Josephson*, 2019 UT 6, ¶ 12, 435 P.3d 255 (cleaned up). Thus, "the issue must be specifically raised by the party asserting error, in a timely manner, and must be supported by evidence and relevant legal authority." *Warrick v. Property Reserve Inc.*, 2018 UT App 197, ¶ 12, 437 P.3d 439 (cleaned up). "The appellant must present the legal basis for [its] claim to the trial court, not merely the underlying facts or a tangentially related claim." *State v. Kennedy*, 2015 UT App 152, ¶ 21, 354 P.3d 775.

¶38      Tenant directs us to several points in the record where it claims it preserved the theories of waiver, estoppel, and unclean hands. At those points, Tenant perhaps addressed the underlying facts for these theories, but Tenant did not connect the underlying facts to those specific theories. Those points in the record also do not show that Tenant raised the theories with specificity or supported those theories with legal authority. *See Warrick*, 2018 UT App 197, ¶ 12. We therefore cannot agree that Tenant raised the theories of waiver, estoppel, and unclean

hands to a level of consciousness before the district court sufficient to preserve them.

¶39 In sum, Tenant has not shown that the district court erred in granting summary judgment to Landlord regarding the Four Alleged Defects. As a result, Tenant has not shown that the district court improperly limited the scope of its claims for breach of the covenant of quiet enjoyment and breach of the warranty of suitability to Landlord's alleged failures to remedy the noise problem, the insect problem, and the maintenance of the common areas.

## II. The Evidence Excluded at Trial

¶40 Tenant next contends that the district court abused its discretion in excluding at trial evidence that Landlord promised to remedy the Four Alleged Defects. Even if Landlord was not obligated to redress the Four Alleged Defects under the terms of the Lease, Tenant asserts that the jury nevertheless should have been allowed to consider evidence that Landlord assured Tenant that Landlord would take care of the problems surrounding the Four Alleged Defects. As Tenant explains, "[Landlord's] promises concerning those issues [with the premises] explained why [Tenant] waited as long as it did to vacate," and the jury was precluded from considering whether "it was reasonable for [Tenant] to rely on [Landlord's] assurances." Tenant thus argues that the excluded evidence had bearing on its assertion that Landlord constructively evicted it from the premises.[5]

---

5. Tenant does not expressly identify the claims or defenses it contends this evidence is relevant to, but argues generally that it is relevant to the issue of constructive eviction and particularly whether its delay in vacating was reasonable. The jury was instructed that the issue of constructive eviction was relevant to Landlord's claim for breach of the Lease and Tenant's claim for breach of the covenant of quiet enjoyment. Based on those

(continued…)

¶41 "An appellant challenging the exclusion of evidence bears the burden of showing the harmfulness of the error." *Deutsche Bank Nat'l Trust Co. v. York*, 2016 UT App 216, ¶ 20, 387 P.3d 527 (cleaned up). Hence, even when the district court has erred in excluding evidence, "reversal is appropriate only in those cases where, after review of all the evidence presented at trial, it appears that absent the error, there is a reasonable likelihood that a different result would have been reached." *Lawrence v. MountainStar Healthcare*, 2014 UT App 40, ¶ 16, 320 P.3d 1037 (cleaned up).

¶42 Even assuming without deciding that the district court exceeded its discretion in excluding the evidence, Tenant has not carried its burden to show the harmfulness of that alleged error. To begin with, Tenant represents generally that Landlord promised to resolve the Four Alleged Defects, but Tenant has not sufficiently identified the particular evidence that was excluded from trial. After the district court ruled and decided not to admit evidence regarding the Four Alleged Defects "when it's contrary to the summary judgment ruling," Tenant redacted content from some of the emails that it introduced at trial to remove references to the Four Alleged Defects. We can discern from viewing the redacted exhibits that in some instances single words were redacted, while in other cases entire sentences appear to have been removed, but Tenant does not direct us to where in the record we can review the evidence that was excluded. Apart from Tenant's general representations that Landlord promised to address the Four Alleged Defects, Tenant's argument similarly does not identify or discuss the excluded evidence in enough detail to allow us to assess the potential harm from its exclusion. As a result, we are left with many unanswered questions about

---

(…continued)

instructions, we understand Tenant to be arguing that the excluded evidence was relevant to Landlord's breach of contract claim and Tenant's breach of quiet enjoyment claim.

exactly what evidence was excluded and whether it was significant enough in context to change the result.

¶43 Further, though "we are under no obligation" "to scour the record to save an appeal by remedying the deficiencies of an appellant's brief," *Wohnoutka v. Kelley*, 2014 UT App 154, ¶¶ 6, 11, 330 P.3d 762, we have, on our own, located unredacted versions of some of the exhibits in the record. From the material we have identified, we cannot say that had that particular evidence been admitted at trial, "there is a reasonable likelihood that a different result would have been reached." *See Lawrence*, 2014 UT App 40, ¶ 16 (cleaned up). For example, one email from Landlord's manager to Tenant stated, with the emphasized language excluded at trial, "I will continue to monitor *the parking* and noise levels and see if we can't get this resolved." This evidence shows that Landlord was engaging with Tenant on the subject of parking, and Tenant contends it supports its position that Landlord's assurances delayed it from vacating sooner. Yet because the admitted portion of this email shows Landlord made assurances, it is not evident that had the words "the parking" been retained the evidentiary balance would have tipped in Tenant's favor on the reasonableness of the timing of its abandonment of the premises.

¶44 Importantly, our consideration of harmfulness in this case is also hindered by the fact that Tenant has not furnished an adequate trial record. In particular, Tenant has provided the transcripts of only two days of the five-day trial. The transcripts include the testimony of two witnesses, but the testimony of eight other witnesses is not available. And although the parties' opening statements are included in the record, their closing arguments are not. These omissions are particularly significant in this case because the evidentiary ruling did not exclude all evidence of Landlord's assurances to Tenant. But without knowing the full extent of what the jury heard and what specifically was excluded, we are unable to gauge how the excluded evidence altered the evidentiary picture of the relevant issues without engaging in pure speculation. Given this lack of

an adequate record on appeal, we are thus prevented from "undertaking a meaningful harmless error analysis," and we cannot grant Tenant appellate relief on this issue. *See Black v. Hennig*, 2012 UT App 259, ¶ 16, 286 P.3d 1256. For these reasons, we conclude that Tenant has not established reversible error.

## III. Attorney Fees

¶45 We first address Tenant's challenge to the district court's award of attorney fees. We then consider Landlord's request for attorney fees incurred on appeal.

A. Tenant's Challenge to the District Court's Attorney Fees Award

¶46 The district court awarded attorney fees to Landlord pursuant to the terms of the attorney fees provision of the Lease. That provision states, "In the event of any legal proceeding brought by either party against the other under the Lease, the prevailing party shall be entitled to recover all reasonable costs and expenses including the fees of its attorneys in such action or proceeding in such amount as the court may adjudge reasonable as attorney's fees." "[I]f provided for by contract, the award of attorney fees is allowed only in accordance with the terms of the contract." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 17, 40 P.3d 1119.

¶47 Tenant contends that the district court's award of attorney fees is flawed in two ways. First, it asserts the court erred in deeming Landlord the prevailing party. Second, it asserts the court erred in finding that Landlord's claimed fees were reasonable.

1. Prevailing Party

¶48 Tenant contends that "neither party is the clear prevailing party" and that therefore the district court erred in awarding attorney fees to Landlord. We disagree.

¶49    As our supreme court observed in *R.T. Nielson*, "determining the prevailing party for purposes of awarding fees can oftentimes be quite simple." *Id.* ¶ 23 (cleaned up). "Where a plaintiff sues for money damages, and plaintiff wins, plaintiff is the prevailing party; if defendant successfully defends and avoids adverse judgment, defendant has prevailed." *Id.* The court cautioned, however, that "[t]his simple analysis cannot always be employed." *Id.* Whether a party is the prevailing party "depends, to a large measure, on the context of each case," and district courts are advised to consider relevant factors while not abandoning their common sense. *Id.* ¶ 25. Among the factors relevant to the determination are: (1) the language of the attorney fee provision, (2) the number of claims brought by the parties, (3) the importance of each claim relative to the others and their significance considering the lawsuit as a whole, and (4) the amounts awarded on the various claims. *Utah Transit Auth. v. Greyhound Lines, Inc.*, 2015 UT 53, ¶ 58, 355 P.3d 947.

¶50    Identifying Landlord as the prevailing party in this case does not seem difficult to us. As the district court correctly noted, this is not a case where both parties "achiev[ed] some level of success." Rather, Landlord brought and prevailed upon its single claim against Tenant while it also defeated both of Tenant's counterclaims, for which Tenant sought damages in excess of $300,000.

¶51    Despite being completely shut out on the verdict, Tenant argues that the district court should have concluded that neither party prevailed. Specifically, Tenant reasons that the litigation was not "a successful endeavor" for Landlord because it recovered only about one-third of the damages it sought at trial. Although the comparison of Landlord's award to its claim is a relevant factor under the prevailing party analysis, *see id.*, the factor cannot be weighed in isolation. Landlord may have recovered only one-third of its $40,000 damage claim for breach of contract, but it successfully defended against counterclaims worth $300,000. Under these circumstances, we would be hard-pressed to say that the district court abused its discretion in

identifying Landlord as the prevailing party.[6] *See id.* ("[W]e employ an abuse of discretion standard when reviewing a district court's prevailing party determination.").

2.      Reasonableness

¶52    Next, Tenant contends that the amount of Landlord's attorney fees was unreasonable because of Landlord's "universal failure to allocate" and to "deduct any fees expended on issues to which it clearly did not prevail at trial." For instance, Tenant asserts that Landlord cannot recover fees incurred pursuing unsuccessful motions. Tenant also contends that Landlord impermissibly "block billed" by lumping multiple tasks under the same time entry and thereby prevented an accurate determination of the reasonableness of its fees.

¶53    The district court's determination of the reasonableness of fees may be based on a variety of factors, including

> the difficulty of the litigation, the efficiency of the
> attorneys in presenting the case, the reasonableness

---

6. Tenant argues that its $300,000 counterclaims should not factor into the prevailing party equation because those claims were based on the same arguments supporting the theory of constructive eviction Tenant advanced in defense of Landlord's breach of contract claim. We are not persuaded. Tenant's claims put Landlord at risk of a $300,000 judgment. The fact that Landlord may have defeated Tenant's counterclaims for the same reasons it succeeded on its breach of contract claim does not make it any less successful. Similarly, we reject Tenant's arguments that Landlord was not a prevailing party because it declined pre-litigation settlement offers in excess of its recovery and because the amount of Landlord's fees exceeded the amount of its award. Once again, in making these arguments, Tenant fails to account for Landlord's defeat of Tenant's $300,000 counterclaims.

of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.

*Dixie State Bank v. Bracken*, 764 P.2d 985, 989 (Utah 1988) (cleaned up). Here, the district court identified these and other factors and ultimately awarded Landlord $124,429.97 in attorney fees, after it reduced the award by $7,658.23 for fees related to some pre-litigation expenses, postage expenses, and expenses related to an interlocutory appeal. The court found that the case "involved complex, somewhat novel areas of law, requiring extensive research and argument," and that most of Landlord's claimed attorney fees were "reasonable given the facts and circumstances."

¶54   With regard to Tenant's complaint that Landlord did not adequately allocate its fees, the district court found that "claim allocation is inapplicable" because "all of [Landlord's] claims were successful and carried with them an entitlement to attorney fees." "[A]n attorney fee application must reasonably allocate time incurred between compensable and non-compensable claims." *Brown v. David K. Richards & Co.*, 1999 UT App 109, ¶ 15, 978 P.2d 470. Here, the district court essentially determined that all of Landlord's claims were compensable because they were all based on the Lease and all "properly categorized as 'successful claims for which there may be an entitlement to attorney fees.'" (Quoting *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998).) We agree with the district court. The governing attorney fees provision broadly permits an award of reasonable attorney fees to the prevailing party in "any legal proceeding brought by either party against the other under the Lease." Tenant summarily claims that there were "issues to which [Landlord] clearly did not prevail at trial," but it does not identify a single claim (or even issue) that was not covered by the specific terms of the Lease. Thus, given that Landlord had no non-compensable

claims under the Lease's attorney fees provision, the district court did not err in determining that there was no need to allocate.

¶55 Tenant also complains that the district court erred in awarding fees to Landlord for its time spent on unsuccessful pre-trial motions. With one exception, the court rejected Tenant's challenge to Landlord's fees on this basis because it found that those motions "led to [Landlord's] ultimate success." In so doing, the court relied on *Dejavue, Inc. v. U.S. Energy Corp.*, 1999 UT App 355, 993 P.2d 222, and determined that "the substance of [Landlord's] motions and overall litigation strategy were ultimately successful." Tenant has not addressed *Dejavue* on appeal, nor challenged the court's determination that the fees incurred were reasonable because they contributed to Landlord's success. As a result, Tenant has not carried its burden of persuasion on appeal. *See* Utah R. App. P. 24(a)(8).

¶56 Similarly, Tenant has not demonstrated that the district court erred in not rejecting certain of Landlord's time entries as unreasonable solely on the basis that they were block billed.[7] The district court concluded that "block billing does not prevent a prevailing party from recovering attorney fees under Utah law," citing two Utah cases where fees were allowed despite the use of block billing. *See Shurtleff v. United Effort Plan Trust*, 2012 UT 47, ¶¶ 10, 41, 289 P.3d 408; *Brown*, 1999 UT App 109, ¶¶ 10, 15, 51. Tenant does not address those cases but instead relies on an unpublished case from the Tenth Circuit Court of Appeals in which the court identified some difficulties associated with block

---

7. Block billing involves recording only an overall time-total for a set of tasks performed rather than separately recording time spent on each task. *See Brown v. David K. Richards & Co.*, 1999 UT App 109, ¶ 10 n.1, 978 P.2d 470. For example, in this case, the lawyer billed 1.2 hours on one day for the following three tasks: "Work on amended complaint. Prepare correspondence to opposing counsel. Prepare stipulation to amendment."

billing. *See BP Pipelines (N. Am.) Inc. v. C.D. Brown Constr., Inc.*, 473 F. App'x 818, 833–36 (10th Cir. 2012). But even in that case, the Tenth Circuit explained that it has "never mandated a reduction or a denial of a fee request based on block billing." *Id.* at 835. Instead, "the decision of whether block billing indicates an unreasonable claim should remain with the district court who should be allowed to exercise its discretion accordingly." *Id.* (cleaned up).

¶57   Here, Tenant invited the district court to strike all of Landlord's block entries without even suggesting that it could not assess the reasonableness of the fees for any one entry. Because an entry is not per se unreasonable simply because it was block billed, Tenant has failed to show that the district court exceeded its discretion in determining the reasonableness of Landlord's attorney fees.

B.     Landlord's Request for Attorney Fees on Appeal

¶58   Finally, Landlord requests an award of the attorney fees it incurred in defending this appeal. "When a party is entitled to attorney fees below and prevails on appeal, that party is also entitled to fees reasonably incurred on appeal." *Dillon v. Southern Mgmt. Corp. Ret. Trust*, 2014 UT 14, ¶ 61, 326 P.3d 656 (cleaned up). Because Landlord was awarded attorney fees in the district court and has prevailed on appeal, we grant Landlord's request for an award of reasonable attorney fees on appeal.

CONCLUSION

¶59   We conclude that Tenant has not established error in the district court's grant of partial summary judgment to Landlord on Tenant's claims as they related to the Four Alleged Defects. Tenant also has not shown reversible error in the district court's exclusion of evidence that Landlord allegedly promised to address the Four Alleged Defects. We also conclude that Tenant failed to show that the district court exceeded its discretion in

awarding attorney fees to Landlord. Accordingly, we affirm the district court's decisions, and we remand for the limited purpose of calculating Landlord's reasonable attorney fees incurred on appeal.

――――――――