**2020 UT App 109**

## THE UTAH COURT OF APPEALS

VAUGHN ERIC WIHONGI,
Appellant,
*v.*
CATANIA SFH LLC, CAPITAL REALTY GROUP LLC,
AND NICHOLAS SANONE,
Appellees.

Opinion
No. 20180800-CA
Filed July 30, 2020

Third District Court, Salt Lake Department
The Honorable Su Chon
No. 160903287

Troy L. Booher, Beth E. Kennedy, Dick J. Baldwin,
and Engels Tejeda, Attorneys for Appellant

Benson L. Hathaway, Ryan R. Beckstrom, and
Analise Q. Wilson, Attorneys for Appellees

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

HAGEN, Judge:

¶1     Vaughn Eric Wihongi sued to recover a commission owed to him pursuant to a contract between himself and Catania SFH LLC (Catania). Catania counterclaimed for breach of contract and conversion, claiming Wihongi never returned $25,000 Catania gave to him. The district court entered summary judgment in favor of Catania on its counterclaim, and a jury ultimately awarded Wihongi $99,929 on his breach of contract claim. Because the governing contract required an award of attorney fees to the prevailing party, Wihongi moved for attorney fees after the close of trial. The district court ruled that

neither Wihongi nor Catania was the prevailing party and declined to award fees. Wihongi appeals, arguing he was the prevailing party. Because we determine that the district court acted within its discretion, we affirm.

BACKGROUND

¶2    In 2010, Wihongi and Catania entered into a contract under which Wihongi would locate foreclosed properties, purchase them on behalf of Catania, renovate them, and then sell them for a profit. Pursuant to this contract, Catania ensured that Wihongi had a $25,000 cashier's check at all times so that he would be able to make purchases as properties became available. After a property was sold, Catania would receive a 20% preferred rate of return on invested capital, and the remaining profits would be split between the parties, with 30% going to Wihongi and 70% to Catania. In 2013, this contract was modified so that Catania would receive a 12% preferred rate of return on invested capital and the remaining profits would be split evenly.

¶3    In 2010, Wihongi purchased one such property (the Millar property) on behalf of Catania. The previous owner continued to reside in the Millar property and paid Catania rent until he was able to buy it back in 2016, generating a total profit of $210,000, not including revenue from the rental payments. However, Wihongi never received a commission for the sale.

¶4    Wihongi filed a complaint seeking $105,000 in commission, equal to half of the $210,000 profit from the sale of the Millar property. Wihongi's complaint alleged breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment. In response, Catania filed a counterclaim, claiming breach of contract and the contract's implied covenant of good faith and

fair dealing and conversion, alleging that Wihongi failed to return a $25,000 cashier's check given to him by Catania. Wihongi then amended his complaint to include a claim for intentional interference with economic relations against Nicholas Sanone, Catania's designated broker and principal broker for Wihongi, based on many of the same facts as his claim against Catania. Wihongi sought punitive damages from Sanone. Wihongi also amended his complaint to increase the damages sought against Catania from $105,000 to $244,000, his theory being that the Millar property's rental income should have been included in his commission.

¶5      The district court entered summary judgment in favor of Catania on its breach of contract counterclaim for the $25,000 cashier's check, but Wihongi's contract claims against Catania and his tort claim against Sanone proceeded to a four-day jury trial.[1] The court granted a directed verdict in favor of Sanone on the claim against him. The jury ultimately concluded that Catania breached the contract and awarded Wihongi damages totaling $99,929. The jury also found that Catania breached the implied covenant of good faith and fair dealing but awarded no additional damages for that breach.

¶6      The contract between Wihongi and Catania contained the following attorney fee provision:

> In the event of a dispute between the parties arising under this Agreement, the prevailing party in such dispute shall be entitled to recover its costs, including reasonable attorney fees, from the other party.

---

1. Wihongi's alternative claims for unjust enrichment and promissory estoppel were voluntarily dismissed prior to trial.

Wihongi filed a motion to recover his attorney fees, arguing that he was the prevailing party and entitled to fees because he prevailed on his contract claims. The district court ultimately determined that neither party prevailed and declined to award attorney fees. Wihongi appeals.

## ISSUE AND STANDARDS OF REVIEW

¶7      The question before this court is whether the district court erred in ruling that neither party was the prevailing party under the contract's attorney fee provision. "Whether the district court applied the correct legal standard is a question of law, which we review for correctness." *KB Squared LLC v. Memorial Bldg. LLC*, 2019 UT App 61, ¶ 18, 442 P.3d 1168 (cleaned up). But "whether a party is the prevailing party in an action is a decision left to the sound discretion of the trial court and reviewed for an abuse of discretion." *Vanderwood v. Woodward*, 2019 UT App 140, ¶ 13, 449 P.3d 983 (cleaned up).

¶8      Wihongi argues that "'[s]ince the right [to attorney fees in this case] is contractual, the court does not possess the same equitable discretion to deny attorney's fees.'" (Quoting *Express Recovery Services Inc. v. Olson*, 2017 UT App 71, ¶ 8, 397 P.3d 792 (cleaned up)). While we agree that the court was legally required to award attorney fees to the prevailing party under the terms of the contract, the question of which party prevailed "depends, to a large measure, on the context of each case, and, therefore, it is appropriate to leave this determination to the sound discretion of the trial court." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119. Even where a contract provides that a prevailing party "shall be entitled" to fees, it is still possible that neither party should be deemed to have prevailed "in litigation where both parties obtained mixed results." *See Neff v. Neff*, 2011 UT 6, ¶ 70, 247 P.3d 380 (addressing mandatory language in attorney fee statute). "We therefore review the trial court's determination

as to who was the prevailing party under an abuse of discretion standard."[2] *R.T. Nielson*, 2002 UT 11, ¶ 25.

ANALYSIS

¶9     In determining which party has prevailed in a lawsuit for purposes of awarding attorney fees, "district courts are advised to consider relevant factors while not abandoning their common sense." *Grove Bus. Park LC v. Sealsource Int'l LLC*, 2019 UT App 76, ¶ 49, 443 P.3d 764 (cleaned up). The factors relevant to that determination are: "(1) the language of the attorney fee provision, (2) the number of claims brought by the parties, (3) the importance of each claim relative to the others and their significance considering the lawsuit as a whole, and (4) the amounts awarded on the various claims." *Id.* In conducting this "flexible and reasoned approach," *A.K. & R. Whipple Plumbing & Heating v. Guy*, 2004 UT 47, ¶ 26, 94 P.3d 270, our supreme court has "specifically cautioned against considering only the net judgment in the case and stressed the importance of looking at the amounts actually sought and then balancing them proportionally with what was recovered." *Jordan Constr., Inc. v. Federal Nat'l Mortgage Ass'n*, 2017 UT 28, ¶ 65, 408 P.3d 296. This approach "will permit a case-by-case evaluation by the trial court, and flexibility to handle circumstances where both, or

---

2. Of course, there may be instances where the parties define the term "prevailing party," and in those cases, the court must apply the contractual language as written. *See, e.g.*, *Beckman v. Cybertary Franchising LLC*, 2018 UT App 47, ¶¶ 67–84, 424 P.3d 1016. But Utah courts have repeatedly afforded discretion to prevailing party determinations based on contractual attorney fee provisions where that term is undefined. *See, e.g.*, *Utah Transit Auth. v. Greyhound Lines, Inc.*, 2015 UT 53, ¶ 58, 355 P.3d 947.

neither, parties may be considered to have prevailed." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119.

¶10    "Accordingly, it is possible that, in litigation where both parties obtain mixed results, neither party should be deemed to have prevailed for purposes of awarding attorney fees." *Neff v. Neff*, 2011 UT 6, ¶ 70, 247 P.3d 380. Here, the district court determined that this was such a case. In reaching that conclusion, the court acknowledged the net judgment and considered each of the four factors our supreme court has identified as relevant to the prevailing party analysis.

¶11    First, the court noted that the contractual language showed "that the prevailing party is entitled to recover its reasonable attorneys' fees," but that the contract otherwise did not "discuss how that is determined."

¶12    As to the second factor, the court noted that while Wihongi asserted five claims, two of his claims were pled in the alternative and were not dismissed on the merits, and his fifth claim against Sanone was dismissed via directed verdict.[3]

---

3. Although Wihongi assumes that "[t]he district court was technically correct that [Wihongi] asserted five claims and Catania asserted two," we note that Wihongi's fifth claim against Sanone for intentional interference with economic relations should not have been included in that count because Sanone was not a party to the contract containing the attorney fee provision. *See Express Recovery Services Inc. v. Olson*, 2017 UT App 71, ¶ 11, 397 P.3d 792 ("[W]here the parties request attorney fees pursuant to a contract, only claims based on or related to that contract figure into the prevailing-party analysis."). But counting the claim against Sanone did not affect the district court's prevailing party analysis because, as Wihongi acknowledges, the court "does not appear to have given those numbers any significance."

Although Wihongi prevailed on his two remaining claims, "no damages were awarded for the breach of the covenant of good faith and fair dealing." Therefore, the court concluded that Wihongi "prevailed on one claim with an award of damages." Catania brought two counterclaims and similarly "prevailed on one counterclaim with an award of damage."

¶13 The court next weighed the "importance of the claims and their significance against each other." The court noted that the "claims [we]re interrelated because they ar[o]se from the same contract." Because both parties prevailed on their breach of contract claims, the court concluded that the claims were "equally weighted."

¶14 Finally, as to the last factor, the court considered the amount of damages Wihongi sought in comparison to the amount he recovered. The court found that Wihongi sought damages of $244,000 and recovered $99,929. In comparison, Catania recovered on one of its two counterclaims, but recovered the full amount it sought in damages—$25,000. The court stated that "a total victory [for Catania] would have been return of the $25,000 and defeat of all of [Wihongi's] pled claims."

¶15 The court also acknowledged the limitations of the net judgment rule and considered the amounts actually sought balanced proportionally with what was recovered. The court concluded that Wihongi's "net judgment after paying [Catania] is $74,929 which would be 31% of the total amount claimed. This appears to be a draw for both parties." Based on this analysis, the court determined that neither party could be considered the prevailing party and, therefore, declined to award attorney fees.

¶16 Wihongi contends that the district court's prevailing party analysis was flawed in three respects. First, he asserts that the court erred by determining that Wihongi's and Catania's claims were "equally weighted." Second, Wihongi asserts that the court

erred when it found that he "sought $244,000 in damages, rather than the $105,000 he asked the jury" to award him. This error, Wihongi contends, "skewed [the court's] analysis of the comparative victories." Lastly, Wihongi argues that the court abused its discretion by ignoring the relative culpability of the parties. He asserts that culpability is "a dispositive factor in the prevailing party analysis," and that culpability, rather than damages, dictates the result of that analysis. We address each argument in turn.

A.      "Equally Weighted"

¶17     First, Wihongi challenges the district court's conclusion that Wihongi's and Catania's claims were "equally weighted." Wihongi argues that because his damages claim "was four times greater than Catania's, the reason the lawsuit was filed, the central issue in the case, and the only issue presented to the jury," the court's statement was erroneous. Wihongi also complains that the court "provided no explanation for this puzzling ruling."

¶18     Because the determination of which party prevailed "depends, to a large measure, on the context of each case," we recognize that "the [district] court is in a better position than we are as an appellate court to decide which party is the prevailing party." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119. This is especially true where, as here, a case involves counterclaims, a series of pretrial motions, and legal theories that evolved over the course of the multi-year litigation. *See, e.g., Airport Park Salt Lake City LP v. 42 Hotel SLC LLC*, 2016 UT App 137, ¶ 29, 378 P.3d 117 (declining to make the prevailing party determination in a case which involved a "complex course of events," the settlement of the majority of the parties' claims before trial, and "reservation of the attorney-fees issue," recognizing that "the district court is better positioned to determine whether one party truly prevailed").

¶19   Here, the court noted that both parties had successfully asserted claims arising under the same contract. Wihongi agrees that, "in effect, each party asserted only one claim—[Wihongi] sought his commission, and Catania sought the return of its cashier's check." But, he argues, Catania's claim was relatively "minor" because it amounted to only 25% of Wihongi's commission and "was disposed of on summary judgment after a single round of briefing." Catania counters that such an approach "would have a court ignore the parties' efforts put into discovery, motion practice, and other pretrial aspects of the case and punish parties that prevail as a matter of law before trial."

¶20   We agree with Catania that in weighing the relative importance of the claims, the district court must consider the entire life of the litigation, including what portion of the litigation was consumed by discovery and pretrial motion practice on the various claims resolved before trial and whether the unsuccessful claims required a significant investment of time and resources over and above that which was required to prevail on the successful claims. Having presided over the entire course of the litigation, the district court was in the best position to determine "the importance of each claim relative to the others and their significance considering the lawsuit as a whole." *See Grove Bus. Park LC v. Sealsource Int'l LLC*, 2019 UT App 76, ¶ 49, 443 P.3d 764.

¶21   Although the district court did not make detailed factual findings to support its conclusion that the claims were "equally weighted," Wihongi has not argued that the district court's findings are legally insufficient, nor has he requested a remand for entry of supplemental findings. And the court's ruling is sufficiently detailed to "enable meaningful appellate review." *See Neff v. Neff,* 2011 UT 6, ¶ 61, 247 P.3d 380 (cleaned up). A district court's findings of fact must "permit an appellate court to evaluate the reasonableness of the . . . court's decision in the

light of the rules [the Utah Supreme Court has] set forth for determining attorney fees awards." *Id.* ¶ 62. Here, the ruling "adequately sets forth reasoning that accounts for the various factors we require courts to examine when awarding attorney fees in cases, like this one, where opposing parties obtain mixed results." *See id.* ¶ 63. Having undertaken the correct analysis, the court's conclusion that the parties' claims were "equally weighted" is a determination entitled to deference on appeal. Because the district court is better positioned to consider the "whole scope of litigation" in determining whether either party prevailed, *see id.* ¶ 5, we defer to the court's assessment of the relative importance of the claims.

B.     Damages Sought

¶22     Wihongi next argues that only "the amount actually sought at trial" should be considered in weighing the damages sought and recovered. Specifically, Wihongi contends that the district court should have used the $105,000 figure that he sought in his initial complaint and requested at trial, rather than the $244,000 figure sought in his amended complaint. Although Wihongi cites cases that base the prevailing party analysis on the "at-trial demand," *see First Sw. Fin. Services v. Sessions*, 875 P.2d 553, 554 (Utah 1994); *Olsen v. Lund*, 2010 UT App 353, ¶ 13, 246 P.3d 521, those cases do not squarely address this issue and do not hold that damage claims abandoned or otherwise resolved before trial are irrelevant to the prevailing party analysis. Moreover, our supreme court rejected a similar argument in *Neff v. Neff*, 2011 UT 6, 247 P.3d 380, where one party cited "as the basis of his victory the fact that he obtained all of the relief he ultimately requested at trial—after he had reduced his million dollar-plus damages request to a mere request for nominal damages." *Id.* ¶ 73.

¶23     In arguing that his recovery should be measured against the $105,000 in damages sought in his original complaint and at

trial, rather than the $244,000 demand in his amended complaint, Wihongi contends that the $244,000 figure was sought "only temporarily, as a result of Catania's insistence that only the strict terms of the 2010 contract governed [his] claims." But the amended complaint was the operative document on which subsequent discovery, pre-trial motions, and trial preparation were based. The district court was in the best position to assess whether the inflated demand for damages was attributable solely to Catania's changing tactics, as Wihongi suggests, or whether Catania successfully avoided liability for more than double the amount of damages as a result of its pretrial litigation efforts. Given the district court's familiarity with the intricacies of the case and the history of the litigation, we defer to its determination that the $244,000 sought in the amended complaint is the relevant figure for assessing the parties' comparative victories.

¶24   Relatedly, Wihongi challenges the district court's conclusion that Wihongi's net judgment represented only 31% of the damages sought. Having determined that the district court acted within its discretion by treating the demand in the amended complaint as the starting point for damages, we see no error in the court's calculation. Once the $99,929 recovered by Wihongi is offset by the $25,000 recovered by Catania, Wihongi's net judgment of $74,929 represents approximately 31% of the $244,000 damages sought in his amended complaint.

¶25   Wihongi further argues that even if the court's calculation is correct, "a 31% recovery is not a basis to find that [Wihongi] did not prevail." As Wihongi correctly points out, "a party who recovers only a percentage of his claimed damages can nonetheless be the prevailing party." But "[t]he hallmark for determining which party has prevailed is not whether one party has recovered money in an absolute sense, but whether the trial court's decision about who prevailed was based on an approach that was flexible and reasoned." *Neff*, 2011 UT 6, ¶ 70. Here, the

district court did not base its conclusion solely on the fact that Wihongi's net recovery represented only 31% of the damages claimed in the amended complaint. *See Grove Bus. Park LC v. Sealsource Int'l LLC*, 2019 UT App 76, ¶ 51, 443 P.3d 764 (noting that, "[a]lthough the comparison of [a party's] award to its claim is a relevant factor under the prevailing party analysis," it "cannot be weighed in isolation"). Rather, the district court's "analysis was flexible and reasoned and proceeded from the common-sense perspective we have asked trial courts to employ in resolving issues like this one." *See Neff*, 2011 UT 6, ¶ 74. Having employed the correct analysis, the district court's ultimate conclusion that neither party prevailed is not outside the bounds of its discretion.

C.    Culpability

¶26    Finally, Wihongi argues "that the court ignored Catania's culpability, a dispositive factor in the prevailing party analysis." Relying on *Brown v. Richards*, 840 P.2d 143 (Utah Ct. App. 1992), and *First Southwestern Financial Services v. Sessions*, 875 P.2d 553 (Utah 1994), Wihongi argues that "'[i]t is the determination of culpability, not the amount of damages, that determines who is the prevailing party.'" *See Sessions*, 875 P.2d at 556 (quoting *Brown*, 840 P.2d at 155). But Wihongi has not cited a single appellate decision in the last twenty-five years that discussed culpability in the context of a prevailing party analysis. More importantly, the proposition that any one factor is dispositive runs counter to the common-sense, factor-based approach consistently applied by Utah courts in the years since those cases were decided. The district court properly applied the legal standard articulated in Utah's most recent appellate case law, which is not driven by the parties' relative culpability.

¶27    That is not to say that a district court cannot consider culpability as one of many relevant factors bearing on which party prevailed. Categorically excluding such a factor would be

contrary to the flexible and reasoned approach our supreme court has adopted. *See A.K. & R. Whipple Plumbing & Heating v. Guy*, 2004 UT 47, ¶ 26, 94 P.3d 270 (leaving "it to the trial courts' discretion to decide which additional common sense perspectives are most appropriate to consider in future cases"). But we see no error in failing to address a factor that the relevant case law last mentioned over twenty-five years ago, particularly where the question of culpability was not as one-sided as Wihongi suggests. Both parties alleged that the other breached the contract, and both recovered damages on their respective claims. The fact that Catania's counterclaim was "disposed of on summary judgment after a single round of briefing" might even suggest that Wihongi's culpability for failing to return the $25,000 cashier's check was more clear-cut than Catania's culpability for refusing to pay the commission. At the very least, the determination that both parties breached the contract does not establish that Catania was the only culpable party. Therefore, even if it had factored in culpability, the district court would not have exceeded the limits of its discretion in finding that the result was "a draw."

¶28    Where the district court undertakes the correct legal analysis, we afford ample discretion to its ultimate determination regarding the prevailing party. "The reason that we defer to the trial court's judgment, and reverse a trial court's attorney fees determination only if the trial court exceeds the bounds of its discretion, is that the trial court is in a better position than appellate courts to decide which party is the prevailing party." *Neff v. Neff*, 2011 UT 6, ¶ 71, 247 P.3d 380 (cleaned up). Here, we conclude that the district court "acted within the bounds of its discretion when it denied [Wihongi's] motion for attorney fees because the court employed the necessary flexible and reasoned approach to awarding fees in a case where opposing parties each obtain mixed results." *See id* ¶ 59.

CONCLUSION

¶29 Having applied the correct legal standard, the district court did not exceed its discretion in finding that neither party prevailed for purposes of the contract's attorney fee provision. Therefore, we affirm the denial of Wihongi's motion for attorney fees.

_____