2002 UT 11

**R.T. NIELSON COMPANY, a Utah corporation, Plaintiff and Appellee,**

v.

**Merrill COOK, an individual, and Merrill Cook for Congress Committee, a Federal Election Campaign Committee, Defendants and Appellants.**

Nos. 20000584, 20010029.

Supreme Court of Utah.

Jan. 25, 2002.

Blake S. Atkin, Jonathan L. Hawkins, Salt Lake City for defendants.

Craig C. Coburn, Russell C. Fericks, Bastiaan K. Coebergh, Salt Lake City, for plaintiff.

WILKINS, Justice.

¶ 1 Merrill Cook and the Merrill Cook for Congress Committee (collectively "Cook") have asked us to determine whether the trial court erred in instructing the jury that parties to a written agreement containing a provision requiring any modifications to be in writing, may, nevertheless, orally modify that agreement. Cook has also asked us to determine whether the trial court erred in awarding attorney fees to R.T. Nielsen Company ("RTNC"), and whether the trial court exceeded its permitted range of discretion in finding that the amount of attorney fees awarded were necessary and reasonable. We affirm the judgment of the trial court in all regards, concluding that the jury instruction issue was not properly preserved for appeal and that the trial court did not err in awarding attorney fees to RTNC.

## BACKGROUND[1]

¶ 2 "We view the facts in the light most favorable to the jury verdict and recite them accordingly." *Gorostieta v. Parkinson,* 2000 UT 99, ¶ 2, 17 P.3d 1110 (citation omitted).

---

1. Despite failures by both parties to adequately comply with Rule 24(a)(7) & (e) of the Utah Rules of Appellate Procedure, we decline to strike the briefs under rule 24(j).

The R.T. Nielson Company ("RTNC") entered into an agreement with Merrill Cook, both personally and as a representative of the Merrill Cook for Congress Committee, in March 1996. The parties reduced their agreement to a writing (the "Services Agreement"), a complete integration of the parties' agreement as of March 1996. RTNC agreed to provide Cook with various political consulting services, including campaign planning and strategy, polling, advertising, and fund raising, during Mr. Cook's 1996 campaign for election to the United States House of Representatives. In exchange for these services, Cook agreed to pay RTNC, among other things, a flat fee of $40,000 for consulting services to be provided from March 5, 1996, through May 4, 1996, the date of the party convention, and additional monthly fees of $4,000 for services to be provided after May 4, through the primary and general elections. The parties also agreed that "[a]dditional services and fees may be negotiated and agreed to at a latter [sic] date." The agreement further reads, "No change or modification of this Agreement shall be valid or binding unless it is in writing and signed by the party intended to be bound."

¶ 3 After Mr. Cook won the party nomination at the convention on May 4, 1996, and as his campaign progressed, Cook and RTNC had continuous discussions about the future of the campaign and the extent of RTNC's involvement in upcoming phases of the campaign. RTNC continued to provide the same services to Cook's campaign after the convention, through the primary and general election phases, as it did during the time leading up to the convention.

¶ 4 After Mr. Cook was elected to office, RTNC and Cook disagreed on whether Cook owed money for services provided by RTNC beyond those agreed to in the Services Agreement. In particular, the parties disputed whether, after the parties entered into the written Services Agreement, Cook verbally agreed to pay for additional services provided by RTNC that were not agreed to as part of the written agreement. RTNC alleged that Cook and RTNC verbally modified the written Services Agreement. Cook, on the other hand, claimed that the Services Agreement was never modified.

¶ 5 RTNC sued Cook for compensation for the alleged additional services, claiming, among other things, Cook breached both oral and written contracts. The matter proceeded to trial, and in instructing the jury, the trial judge provided the following special verdict form: "Did the R.T. Nielson Co. and Merrill Cook and the Merrill Cook for Congress Committee modify their Services Agreement as alleged by the R.T. Nielson Co.?" Despite the fact that the written Services Agreement reads, "No change or modification of this Agreement shall be valid or binding unless it is in writing and signed by the party intended to be bound," counsel for Cook did not object to the instruction.

¶ 6 The jury found that the parties orally modified the written Services Agreement. The jury also found that Cook breached this modified agreement, failing to pay RTNC $182,483. The jury further concluded that Cook owed an additional $11,509 for consulting services, equipment rental, and office rental costs incurred during the post-election transition phase. The jury also determined that RTNC breached the Services Agreement and concluded that Cook had been damaged $19,521. On December 20, 2000, the trial court entered judgment, ordering Cook to pay RTNC $162,962 plus prejudgment interest and $11,509 plus prejudgment interest.

¶ 7 In addition, the trial court awarded attorney fees to RTNC. In the written Services Agreement, the parties agreed that "[t]he prevailing party to any litigation brought to enforce any provision of this Agreement shall be awarded its costs and attorneys fees." The trial judge determined that RTNC was the prevailing party. The first affidavit for attorney fees submitted by counsel for RTNC was found to be inadequate by the trial judge. However, RTNC submitted a supplemental affidavit, which the trial court accepted and upon which it awarded attorney fees of $195,800.93. Cook claims the supplemental affidavit is also inadequate.

¶ 8 Cook appeals the judgment entered December 20, 2000, challenging the jury instruction and the award of attorney fees. RTNC requests that the trial court's judg-

ment be affirmed, and asks for attorney fees and costs on appeal.

## ANALYSIS

### I. PRESERVATION OF THE JURY INSTRUCTION CHALLENGE ·

¶ 9 Cook insists that the trial court erred in instructing the jury to find whether the parties orally modified the written Service Agreement because, as a matter of law, the Services Agreement could not have been orally modified. He claims the trial court never should have instructed the jury to find whether the written Services Agreement was orally modified because the written Services Agreement provided that the agreement could only be modified in writing, and no written modification was entered into. Cook points out that the jury could have been asked to determine whether a separate verbal agreement (as opposed to an oral modification of the Services Agreement) was entered into, but this question was never presented to the jury, and thus never answered. RTNC argues that this issue was not properly preserved for appeal because Cook never raised it before the trial court, either by written motion or verbally. Because Cook failed to object to the instruction at trial, RTNC insists that Cook acquiesced to the jury instruction, thereby waiving his right to challenge it on appeal. RTNC also contends that, even assuming the question was properly preserved, the trial court did not err in instructing the jury to find whether the parties orally modified the written Service Agreement because Utah law clearly directs that written agreements can be orally modified even if the written agreement contains a provision to the contrary. Cook counters that despite the fact that the issue was "unartfully preserved," the judgment should not be allowed to stand. He further insists that even if the challenge to the jury instruction was not properly preserved, the award of attorney fees was properly preserved, and this contract issue relates to the award of attorney fees.

¶ 10 We conclude that Cook's allegation that the jury instruction was improper was not adequately preserved for appeal. Cook never objected to the jury instruction regarding oral modification of the agreement. "No party may assign as error the giving or the failure to give an instruction unless he objects thereto. In objecting to the giving of an instruction, a party must state distinctly the matter to which he objects and the grounds for his objection." Utah R. Civ. P. 51. Thus, in order to appeal the giving or the refusal of a jury instruction, a party must properly object to the instructions in the trial court and explain its grounds, with specificity, for challenging the instructions. *Id.; Morgan v. Quailbrook Condo. Co.,* 704 P.2d 573, 579 (Utah 1985). Jury instructions must be objected to with specificity in order to give the trial court an opportunity to correct any errors or fill any inadequacies in the instructions given so that the jury may consider the case on the proper basis. *State v. Kazda,* 545 P.2d 190, 192–93 (Utah 1976). If a party does not object and articulate the grounds with sufficient specificity such that the issue is presented before the trial court for consideration, that issue cannot be raised on appeal.

¶ 11 Cook never challenged at trial the instruction on oral modification as being improper as a matter of law. Instead, Cook acquiesced to the instruction and argued to the jury that the evidence presented at trial was insufficient to support an oral modification. This is insufficient to preserve the claim that the trial court erred in giving the instruction. Cook did not specifically object to the instruction offering as grounds the claim he raises now—namely, that the instruction misstated the law. Cook did not sufficiently bring the issue to the attention of the trial judge such that the trial judge could consider it and correct any error.[2]

¶ 12 Cook's alleged preservation is insufficient. Cook claims he "unartfully" preserved the issue by mentioning, as a defense in his answer and counterclaim, that oral modifica-

---

2. The trial transcript indicates that on April 13, 2000, the trial court offered to permit counsel to argue any objections to jury instructions for the record that afternoon or the following morning. Counsel for Cook suggested that the parties might be able to stipulate to the jury instructions, but if not that he would "come in and put those exceptions on the record ... tomorrow morning." No objections to the instructions at trial were identified by Cook in the record, nor has our independent review of the record revealed any.

tions of the written Services Agreement were prohibited by that agreement.[3] This argument fails. Cook did not, and could not, challenge the *jury instruction* as improper in the answer and counterclaim, since the instructions to the jury were prepared and delivered at a later date. Moreover, raising of an issue in the answer and counterclaim without any supporting evidence or relevant legal authority does not present the issue to the trial judge for a decision and preserve the issue for appeal. *See LeBaron & Assoc. v. Rebel Enters.*, 823 P.2d 479, 482–83 (Utah Ct.App.1991) (noting that the "mere mention" of an issue in trial pleadings, absent supporting evidence or legal authority, does not sufficiently raise and thereby preserve an issue for appeal because the trial court has no opportunity to consider the issue's merits or correct any error).

 ¶ 13 Finally, rule 51 of the Utah Rules of Civil Procedure also states, "Notwithstanding the foregoing requirement [of

objecting to a proposed instruction at trial], the appellate court, in its discretion and in the interests of justice, may review the giving of or failure to give an instruction." If erroneous jury instructions are given, and if to permit the error would be contrary to the interests of justice, this court could, in its discretion, correct the error. However, the aggrieved party has the burden of presenting a persuasive reason for the court to exercise that discretion, and this requires showing special circumstances warranting such a review. *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 (Utah 1991). Before us is no likelihood of injustice that requires the court's review, and Cook has not argued, much less demonstrated, special circumstances warranting review by this court in the interest of justice.[4]

## II. ATTORNEY FEES

¶ 14 Cook challenges the award of attorney fees to RTNC on several grounds.

---

**3.** Cook's answer and counterclaim reads, "Any alleged oral contract between plaintiff and defendants is void pursuant to paragraph 15 of the Services Agreement." Paragraph 15 indicates that the written agreement is a complete, integrated agreement, and that "[n]o change or modification of [the] Agreement shall be valid or binding unless it is in writing...."

**4.** Even if Cook had adequately preserved the issue for appeal, the trial court did not err in instructing the jury to find whether the contract was modified orally. The instruction challenged by Cook reads as follows: "**ORAL MODIFICATION OF WRITTEN CONTRACT** Parties to a written contract are free to modify that contract by oral or verbal agreement, even though the written contract may prohibit oral or verbal modifications or require that modifications be in writing." This instruction accords with Utah law. In Utah, parties to a written agreement may not only enter into separate, subsequent agreements, but they may also modify a written agreement through verbal negotiations subsequent to entering into the initial written agreement, even if the agreement being modified unambiguously indicates that any modifications must be in writing. *Prince v. R.C. Tolman Const. Co., Inc.*, 610 P.2d 1267, 1269 (Utah 1980) ("[N]otwithstanding recitals in a prior contract restricting changes or modification in its terms, the parties are as free in appropriate circumstances to renegotiate new terms or to make separate supplemental agreements as they were to make the contract in the first place." (citing *Cheney v. Rucker*, 14 Utah 2d 205, 208, 381 P.2d 86, 89 (1963))); *PLC Landscape Constr. v. Picca-*

*dilly Fish 'N Chips, Inc.*, 28 Utah 2d 350, 351–52, 502 P.2d 562, 563 (1972) ("Except where a change, modification or addition to a contract may conflict with the well-recognized rule against varying a written contract by parol, there is nothing so sacrosanct about having entered into one agreement that it will prevent the parties entering into any such change, modification, extension or addition to their arrangement for doing business with each other that they may mutually agree."); *Davis v. Payne and Day, Inc.*, 10 Utah 2d 53, 56, 348 P.2d 337, 339 (1960) ("It is a well-established rule of law that parties to a written contract may modify, waive, or make new terms notwithstanding terms in the contract designed to hamper such freedom." (citing, inter alia, *Salzner v. Jos. J. Snell Estate Corp.*, 81 Utah 111, 16 P.2d 923 (1932))); *see also* 2 *Corbin on Contracts* § 7.14 at 404 (1995) ("Apart from statute, the common law rule is that '[e]ven where the contract specifically states that no non-written modification will be recognized, the parties may yet alter their agreement by parol negotiation.' This rule reflects the notion that contracting parties cannot today restrict their power to contract with each other tomorrow.") (footnotes listing citations omitted); 17A C.J.S. *Contracts* § 414 (1999) (explaining why a written contract may be orally modified notwithstanding a clause in the contract stipulating that any modification must be in writing). We also note, however, that if an original agreement is within the statute of frauds, a subsequent agreement that modifies the original agreement must also satisfy the requirements of the statute of frauds to be enforceable. *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 732 (Utah 1985).

### A. Award of Fees Based on Modified Services Agreement

¶ 15 Cook first argues the trial court erred in awarding attorney fees to RTNC because the award of fees is not supported by an enforceable contract. He claims, in essence, that the attorney fees provision of the written Services Agreement is not part of the agreement as orally modified. Cook claims RTNC failed to prove he breached an agreement containing an attorney fee provision, arguing that the parties never agreed, as part of the orally modified contract, that attorney fees would be awarded to the prevailing party. Cook insists that RTNC failed to show that the parties intended that the attorney fees provision in the written Services Agreement apply to the new contract as orally modified, and he asserts that Utah law does not permit attorney fees to be awarded for breach of an oral agreement. RTNC argues that the trial court did not abuse its discretion or clearly err in awarding attorney fees to RTNC as the prevailing party because the modified written contract was a proper basis for awarding attorney fees.

¶ 16 We hold that the trial court did not err in concluding that attorney fees were recoverable by RTNC. Whether attorney fees are recoverable is a question of law, which we review for correctness. *Valcarce v. Fitzgerald,* 961 P.2d 305, 315 (Utah 1998).

¶ 17 RTNC is entitled to recover attorney fees in this case pursuant to the written Services Agreement as modified. "In Utah, attorney fees are awardable only if authorized by statute or contract." *Softsolutions, Inc. v. Brigham Young Univ.,* 2000 UT 46, ¶ 41, 1 P.3d 1095 (quoting *Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988)); Utah Code Ann. § 78–27–56.5 (1996) (indicating attorney fees may be awarded to a prevailing party based upon a written contract). The written Services Agreement between Cook and RTNC unambiguously directs that the prevailing party receive attorney fees for litigation brought to enforce the agreement. Section 14 reads, "The prevailing party to any litigation brought to enforce any provision of this Agreement shall be awarded its costs and attorneys fees." However, if provided for by

contract, the award of attorney fees is allowed only in accordance with the terms of the contract. *Dixie State Bank,* 764 P.2d at 988. The question, therefore, is whether, after the agreement was orally modified, section 14 is still part of the modified agreement.

¶ 18 The jury found that the initial written Services Agreement was modified. Where, as here, parties later orally modify other terms of a written contract, the remaining terms of the initial agreement still govern. *See Fisher v. Fisher,* 907 P.2d 1172, 1177 (Utah Ct.App.1995). Cook and RTNC's initial written Services Agreement dictated that attorney fees were to be awarded to the prevailing party. The jury found that the parties modified the agreement as it related to services to be performed by RTNC and Cook's payment for those services, but the parties have not identified, nor has our review of the record revealed, any evidence that the attorney fees provision was amended by the subsequent modifications. It therefore follows that the attorney fees provision still governs, and RTNC's award of attorney fees may be based appropriately upon the parties' original contract language on attorney fees.

### B. Adequate Support for Fees Being Necessary and Reasonable

¶ 19 Cook further contends that RTNC failed to demonstrate that the fees were reasonable and necessary. He argues that RTNC failed to properly support its claims for fees. He insists that RTNC never showed that the fees were incurred. He claims the affidavit submitted by counsel for RTNC failed to adequately itemize specific work performed, and emphasizes that the affidavit was not accompanied by any contemporaneous evidence (billing entries or other records) that the fees were incurred. RTNC contends that it was not required to provide contemporaneous billing information or other billing receipts to prove the fees were incurred, and that Cook's challenge that the fees were not reasonable and necessary fails because Cook failed to demonstrate that the trial court's award was clearly erroneous.

¶ 20 "[T]he trial court has broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard." *Dixie State Bank v. Bracken,* 764 P.2d 985, 991 (Utah 1988). The trial court did not abuse its discretion in concluding that the fees awarded were necessary and reasonable. Moreover, we disagree with Cook's claim that the supplemental affidavit submitted by counsel for RTNC was insufficient evidentiary support for the award.

¶ 21 While not an ideal presentation of time spent and work performed, the supplemental affidavit presented by counsel for RTNC is sufficient evidence to support the award of attorney fees. The trial judge noted that the affidavit complied with Rule 4–505 of the Judicial Council Rules of Judicial Administration. Indeed, the supplemental affidavit relied upon by the court contained "the legal basis for the award, the nature of the work performed by the attorney, the number of hours spent to prosecute the claim to judgment, or the time spent in pursuing the matter to the stage for which attorney fees are claimed, and affirm[ed] the reasonableness of the fees for comparable legal services." Utah R. Jud. Admin. 4–505(1); *see also LMV Leasing, Inc. v. Conlin,* 805 P.2d 189 (Utah Ct.App.1991) (concluding that under Rule 4–505(1), only the legal basis of the award, the nature of the work performed by the attorneys, the number of hours spent to prosecute the claim, and some affirmation that the fees charged are reasonable in light of comparable legal services must be included in the affidavit submitted by the party requesting the fees in order to comply with the rule). The affidavit also "separately state[s] hours by persons other than attorneys, for time spent, work completed and hourly rate billed." Utah R. Jud. Admin. 4–505(2). The supplemental affidavit complies with Rule 4–505 and is sufficient evidentiary support for the attorney fees award. Consequently, the district court did not abuse its discretion in awarding attorney fees to RTNC based on this evidence.

*C. Prevailing Party Determination*

¶ 22 Cook insists the trial court erred in applying the "net judgment rule" and not awarding him attorney fees for prevailing on his claim that RTNC breached the written Services Agreement. RTNC asserts that Cook was not entitled to attorney fees because he was not a prevailing party.

¶ 23 As the court of appeals noted in *Mountain States Broadcasting Co. v. Neale,* "determining the 'prevailing party' for purposes of awarding fees [can oftentimes be] quite simple." 783 P.2d 551, 555 (Utah Ct. App.1989). Where a plaintiff sues for money damages, and plaintiff wins, plaintiff is the prevailing party; if defendant successfully defends and avoids adverse judgment, defendant has prevailed. *Id.* This simple analysis cannot always be employed, however.

¶ 24 The court of appeals, when presented with a similar agreement awarding attorney fees to the prevailing party, noted that "under the provision at issue, there can be only one prevailing party even though both plaintiff and defendant are awarded money damages on claims arising from the same transaction." *Id.* at 556. In support, the court of appeals cited two of our cases, *Checketts v. Collings,* 78 Utah 93, 1 P.2d 950 (1931), and *Trayner v. Cushing,* 688 P.2d 856 (Utah 1984). *Checketts* states that "[t]here can be but one prevailing party in an action at law to recover a money judgment." 78 Utah 93, 101–02, 1 P.2d 950, 953 (citation omitted). In *Trayner,* however, we noted that both parties to a contractual claim may be entitled to attorney fees as the prevailing party where the contractual provision awarding attorney fees does not mention "prevailing party" and each party is successful on one or more claims. 688 P.2d at 858. The court of appeals, in a series of footnotes in *Mountain States Broadcasting Co.,* noted the difficulty in determining which party prevails in complicated cases involving multiple claims and parties, mentioned that in some circumstances both parties may be considered to have prevailed, and expressed the "need for a flexible and reasoned approach to deciding in particular cases who actually is the 'prevailing party.'" 783 P.2d at 556 n. 7–10.

¶ 25 Which party is the prevailing party is an appropriate question for the trial court. This question depends, to a large

measure, on the context of each case, and, therefore, it is appropriate to leave this determination to the sound discretion of the trial court. We therefore review the trial court's determination as to who was the prevailing party under an abuse of discretion standard. Appropriate considerations for the trial court would include, but are not limited to, (1) contractual language, (2) the number of claims, counterclaims, cross-claims, etc., brought by the parties, (3) the importance of the claims relative to each other and their significance in the context of the lawsuit considered as a whole, and (4) the dollar amounts attached to and awarded in connection with the various claims. Based on these and other relevant factors, the trial court is in a better position than we are as an appellate court to decide which party is the prevailing party. In most cases involving language similar to the contractual language before us here, there can generally be only one prevailing party. See Stichting Mayflower Recreational Fonds v. Newpark Res., Inc., 917 F.2d 1239, 1248 (10th Cir.1990) (citing Mountain States Broad. Co., 783 P.2d at 556). However, the standard articulated above will permit a case-by-case evaluation by the trial court, and flexibility to handle circumstances where both, or neither, parties may be considered to have prevailed.

¶ 26 In this case, RTNC's claims, pled in the alternative, included breach of contract, account stated, and quantum meruit. Cook's counterclaims, some also pled in the alternative, included breach of contract, unjust enrichment, and breach of fiduciary duty against RTNC and Ronald Nielsen. The claims tried to the jury included (1) RTNC's claim that Cook breached the modified Services Agreement, (2) RTNC's alternative, overlapping unjust enrichment claim for consulting services, equipment rental, and office rental during the election phase, (3) RTNC's claim for the same expenses during the post-election transition phase, (4) Cook's claim that RTNC breached the Service's Agreement, (5) Cook's alternative claim for unjust enrichment, and (6) Cook's claim for breach of fiduciary duty against RTNC and Ronald Nielson. At trial RTNC prevailed on its claim for breach of contract and was awarded $182,483 by the jury. RTNC also prevailed on its unjust enrichment claim to recover for consulting services, equipment rental, and office rental during the post-election transition phase, and was awarded $11,509 by the jury. RTNC further prevailed in the sense that the jury found that RTNC and Ronald Nielsen did not have a fiduciary relationship with Cook. Cook, on the other hand, prevailed in the sense that the jury found that RTNC breached the Services Agreement as alleged by Cook and awarded Cook damages of $19,521. Based upon these jury findings, the trial court ruled that RTNC was the prevailing party and was therefore entitled to recover attorney fees pursuant to the parties' agreement. We find nothing in the record that persuades us otherwise. Moreover, the contract between the parties indicated that attorney fees were to be awarded to the "prevailing party." Prevailing party is singular in form, not plural, suggesting that only one prevailing party was contemplated. Consequently, we conclude that the trial judge did not exceed her permitted range of discretion in concluding that RTNC was the prevailing party.

### D. Attorney Fees on Appeal

¶ 27 Finally, RTNC requests attorney fees on appeal. Inasmuch as we affirm the jury verdict and the award of attorney fees to RTNC at trial, RTNC is the prevailing party on appeal. As the prevailing party, RTNC is entitled to recover attorney fees incurred on appeal based on the parties' agreement. We therefore remand to the trial court to determine the appropriate amount of attorney fees incurred by RTNC on appeal.

### CONCLUSION

¶ 28 Cook did not properly preserve for appeal the jury instruction issue, and the trial court did not err in concluding attorney fees were recoverable, nor abuse its discretion in awarding the amount of attorney fees it did to RTNC as the prevailing party. Accordingly, the jury verdict and the award of attorney fees are affirmed. We also award attorney fees to RTNC as the prevailing party on appeal, and remand to the district

court to determine the proper amount of the award of fees.

¶ 29 Associate Chief Justice RUSSON, Justice DURHAM, and Judge BENCH concur in Justice WILKINS' opinion.

¶ 30 Having disqualified himself, Justice DURRANT does not participate herein; Court of Appeals Judge RUSSELL W. BENCH sat.

HOWE, Chief Justice, concurring:

¶ 31 I concur except I do not express any opinion on the issue in footnote 4, it being unnecessary to the determination of this appeal.