**2022 UT App 109**

## THE UTAH COURT OF APPEALS

MAXWELL MASONRY RESTORATION & CLEANING LLC,
Appellee,
*v.*
NORTH RIDGE CONSTRUCTION INC.,
Appellant.

Opinion
No. 20200924-CA
Filed September 1, 2022

Third District Court, Silver Summit Department
The Honorable Richard E. Mrazik
No. 180500153

Trevor J. Lee, Attorney for Appellant

M. Darin Hammond, Attorney for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN FORSTER and SENIOR JUDGE
KATE APPLEBY concurred.[1]

TENNEY, Judge:

¶1     North Ridge Construction Inc. (North Ridge) is a general contractor, and in 2017, North Ridge entered into a subcontract with Maxwell Masonry Restoration & Cleaning LLC (Maxwell) for Maxwell to perform masonry work on one of its projects. The project experienced some delays, and when the project was finally completed, the two companies had a disagreement about how much North Ridge owed Maxwell.

¶2     Maxwell later sued North Ridge, asking for more than $250,000 in damages. North Ridge counterclaimed, asking for

---

1. Senior Judge Kate Appleby sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

more than $36,000 in damages. At the close of a bench trial several years later, the district court ruled in favor of each side on one of its claims. The court awarded Maxwell $18,537 in damages on its successful claim, and it awarded North Ridge $16,750 in damages on its successful claim, thus resulting in a net judgment for Maxwell of $1,787.

¶3     The sole issue before us has to do with North Ridge's request for an award of attorney fees. North Ridge contended that it was entitled to its attorney fees as the "prevailing party." But the district court concluded that neither party had prevailed, so it denied North Ridge's request. North Ridge now appeals that determination, and for the reasons set forth below, we agree with North Ridge that it was indeed the prevailing party. We therefore reverse and remand with instructions for the district court to determine and award the attorney fees that North Ridge reasonably incurred below and on appeal.

## BACKGROUND

*The Railyard Restoration Project*

¶4     In early 2017, the city of Evanston, Wyoming, hired North Ridge to be the general contractor for a restoration project on a historic railyard building. North Ridge later entered into a subcontract with Maxwell. In that subcontract, Maxwell agreed to perform "masonry restoration, cleaning and sealing, interior wood cleaning, sanding and sealing" for the project. (Quotation simplified.) The parties agreed that the "project finish date" would be October 24, 2017.[2]

---

2. Although the work took place in Wyoming, Maxwell and North Ridge both have Utah as their principal place of business, and they also agreed in the subcontract that "[a]ll arbitration and litigation proceedings shall take place in Summit County, State of Utah."

¶5 North Ridge agreed to pay Maxwell a "fixed lump sum of $394,241.00 ('Contract Sum') in periodic payments as draws [were] submitted and approved for the value of the work performed." (Quotation simplified.) North Ridge's "actual receipt of payment" from the city was "an express condition precedent to [North Ridge's] payment obligation to [Maxwell]"—i.e., North Ridge was not obligated to pay Maxwell until it received payment from the city.

¶6 The parties also agreed that Maxwell was entitled to payment for "extra work," but only if there was a "written change order." They further agreed that "[i]f [Maxwell] perform[ed] extra work without a written order, [Maxwell] shall be deemed to have waived any claim for compensation for such work." Of particular note for this appeal, the subcontract provided that if "the parties [became] involved in litigation or arbitration with each other arising out of [the subcontract] or other performance thereof . . . the prevailing party [would] be fully compensated for the cost of its participation in such proceedings," including attorney fees.

¶7 Maxwell began work on the project in March 2017, and North Ridge made periodic payments to it as the project progressed. To receive these payments, Maxwell would submit a pay application to North Ridge along with a signed lien release, after which North Ridge would pay Maxwell. During the first few months, there were some change orders for additional work that Maxwell performed, thereby increasing the overall amount that North Ridge owed Maxwell for its work on the project.

¶8 Starting sometime around July 2017 and continuing for the next several months, Maxwell "performed tasks it believed were beyond the scope of work under the Subcontract." Maxwell believed that those tasks were "extra work" as defined in the subcontract, but it did not submit change orders for those tasks. As a result, it did not receive compensation for the alleged "extra work" that it completed during those months.

¶9      By September, the parties realized that Maxwell would not be able to complete its work by the October 2017 finish date. To give Maxwell more time, the city agreed to extend the deadline to November 27, 2017.

¶10     North Ridge had largely finished its work on the project by November 2017, but Maxwell's work was still incomplete. That month, the city issued a Certificate of Substantial Completion to North Ridge, which included a punch list "comprised largely of work Maxwell had not yet started or had done inadequately."[3]

¶11     In December 2017, Maxwell informed North Ridge that it believed it had completed its duties. It also submitted invoices for tasks that it had already completed. Those tasks included work that Maxwell claimed was outside the scope of the subcontract but that North Ridge had allegedly asked it to perform. Maxwell also contended that it was under "time constraints" that prevented it from previously submitting change orders and that North Ridge had "waived" the change order provision of the subcontract. In response, North Ridge contended that this work was within the scope of the subcontract, meaning that Maxwell was not entitled to additional compensation. North Ridge also insisted that it had never waived the change order requirement.

¶12     In February 2018, representatives from North Ridge, Maxwell, and the city met at the railyard to conduct a final walkthrough. After the walkthrough, North Ridge and the city "signed off on Maxwell's work as complete, accepting the project."

¶13     North Ridge's project manager participated in the walkthrough, and he had a final pay application and payment check ready for Maxwell. The city was still retaining a portion of

---

3. A "punch list" is "a list of usually minor tasks to be completed at the end of a project." *Punch list*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/punch%20list [https://perma.cc/56KP-SGXY].

its payment to North Ridge, however, so North Ridge did not include the retained amount in the final payment check to Maxwell.[4] But Maxwell's owner still believed that Maxwell had completed additional work on the project for which it was entitled to additional payment. He became "agitated" as a result, and he refused to speak with North Ridge's project manager. Because of this, North Ridge's project manager "did not feel comfortable providing [Maxwell's owner] with the pay application and check," so as a result, Maxwell did not sign the pay application or receive its final payment that day.

¶14    North Ridge emailed Maxwell a few days later, explaining that North Ridge would put Maxwell's check in the mail as soon as Maxwell signed the pay application. Maxwell refused to sign the pay application, however, instead "demand[ing] additional payment beyond the Subcontract's total amount." Maxwell's owner later conceded that he refused to sign the pay application because "he did not want to jeopardize the lawsuit he planned to file."

*Pretrial Litigation*

¶15    In April 2018, Maxwell filed a complaint against North Ridge. It asserted four causes of action: breach of contract, breach of an implied-in-fact contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing.

¶16    Maxwell initially sought $251,308.38 from North Ridge. Of that amount, $186,084.67 represented work that Maxwell alleged was "additional work outside the scope of the Subcontract." The remaining $65,223.71 represented the balance of the subcontract and approved change orders. This $65,223.71 came from (1) an $18,537.40 final payment that North Ridge was withholding because Maxwell would not sign the pay application and

---

4. North Ridge claimed below that the city retained the funds because of Maxwell's suit, but the district court made no findings about why the city retained the funds.

(2) retainage funds (totaling almost $47,000) that the city was withholding and that North Ridge therefore was not yet obligated to pay to Maxwell under the terms of the parties' subcontract.

¶17    North Ridge responded to the suit with an answer and a counterclaim. The counterclaim asserted causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, and North Ridge also requested "fees and costs incurred in defending this action and attempting to enforce" the subcontract. North Ridge asserted that Maxwell delayed completion of the project by not finishing its work until February 2, 2018, which was 67 days after the extended deadline of November 27, 2017. North Ridge initially sought $36,621 in damages, but it later elected to instead seek damages under the subcontract's liquidated damages provision. That provision provides that "[s]hould [Maxwell's] actions cause a delay in the project beyond the scheduled completion date, liquidated damages will be assessed against the subcontract in the amount relative to the actual delay." And it further provides that "[l]iquidated damages on this project are assessed at $250.00 per day." North Ridge's decision to seek liquidated damages thus reduced its claimed damages to $16,750 ($250 x 67).[5]

¶18    The parties participated in almost a year of discovery. During discovery, the parties deposed representatives from Maxwell, North Ridge, and the city. North Ridge also filed various motions in limine regarding the evidence and arguments that might be presented at trial, several of which were granted. The district court later found that Maxwell abandoned $40,211 of its claimed damages before trial "[i]n response to" North Ridge's motions.

---

5. Nothing in the record explains why North Ridge elected to seek liquidated damages instead of the higher amount that it had originally sought.

## Bench Trial

¶19    The case proceeded to a three-day bench trial. At the close of Maxwell's case, North Ridge moved for a judgment on partial findings under rule 52(e) of the Utah Rules of Civil Procedure. The court granted North Ridge's motion in part, "dismissing Maxwell's claims for unjust enrichment and breach of the implied covenant in their entirety, and Maxwell's breach of implied-in-fact contract in part." But the court allowed Maxwell's breach of contract claim to proceed "as it relate[d] to the amount outstanding under the Subcontract's express terms."

¶20    After North Ridge presented its case, the court issued its decision through written findings of fact and conclusions of law. There, the court first dismissed "the remainder of Maxwell's claim for breach of an implied-in-fact contract" because it found that "Maxwell failed to show North Ridge waived the Subcontract's change order provision." But the court determined that North Ridge had breached the subcontract when it "failed to pay Maxwell $18,537.40." On this, the court found that Maxwell had not accepted payment because North Ridge had conditioned payment on "Maxwell's execution of . . . pay applications that included lien release provisions." The court then concluded that the subcontract did "not provide for receipt of a lien release as a precondition of payment." The court accordingly concluded that North Ridge had breached the subcontract "with respect to the $18,537.40" by improperly conditioning Maxwell's payment "on the execution by Maxwell of a lien release." As to North Ridge's counterclaim, the court determined that Maxwell had breached the subcontract "by delaying" the renovation and was therefore "liable for $16,750 in liquidated damages."

## Attorney Fees Ruling

¶21    In addition to damages, North Ridge sought attorney fees based on the provision in the subcontract under which the

"prevailing party" would be entitled to its fees.[6] Assessing this request in light of the verdict, the court first analyzed how much each party had recovered on its claims as compared to how much each party had initially sought. The court explained that Maxwell had "recovered $65,223.71" of its initial request for $251,308.38, which the court concluded "represents a 26% success rate for Maxwell, with North Ridge defeating 74% of Maxwell's initial claims." It then explained that North Ridge had "recovered $16,750" of its initial claim for $36,621, which the court concluded "represents a 46% success rate for North Ridge on its counterclaim, with Maxwell defeating 54% of North Ridge's counterclaim."

¶22 The court next looked at the case "through the lens of the net judgment awarded." On this, the court concluded that Maxwell was "the comparative victor, inasmuch as the $18,537.40 awarded under Maxwell's breach of contract claim is greater than the $16,750 awarded to North Ridge."

¶23 With these metrics in mind, the court then sought to determine which party (if any) had ultimately "prevailed." The court opined,

> When viewed through the lens of which party more closely achieved a total victory, North Ridge is the comparative victor, inasmuch as it defeated a higher percentage of the opposing party's claims and recovered a higher percentage of its own claims. But the percentage differences are not extreme. Indeed, Maxwell still recovered 26% of its initial damages claim, and North Ridge recovered only 46% of its initial damages counterclaim.

---

6. In its proposed findings of fact and conclusions of law, Maxwell asserted that neither party had prevailed. As such, it asserted that "an award of attorney fees [was] not appropriate."

The court thus concluded that neither party was the "comparative victor," so it "declare[d] a draw." As a result, it did not award either party its attorney fees.

¶24    North Ridge later moved to amend the court's findings of fact and conclusions of law under rule 52(b) of the Utah Rules of Civil Procedure. In its motion, North Ridge contended that it did not breach the subcontract because it "had a contractual basis to withhold payment based on Maxwell's failure to submit an approved pay application." (Quotation simplified.) North Ridge further argued that "even under the current findings," it was the prevailing party and thus entitled to its attorney fees. (Quotation simplified.)

¶25    The court denied North Ridge's motion. It explained that North Ridge had "not shown sufficiently or persuasively that the parties' Subcontract . . . allowed [North Ridge] to condition payment of draws upon execution of lien releases by [Maxwell]." Regarding the prevailing party ruling, the court concluded that it "correctly declared a draw" and that North Ridge's "arguments to the contrary [were] unpersuasive."

¶26    In its final judgment, the court "awarded judgment" to Maxwell "on its claim for breach of contract . . . in the amount of $18,537.40." And it "awarded judgment" to North Ridge "on its counterclaim for breach of contract . . . in the amount of $16,750."

¶27    North Ridge appeals.


ISSUE AND STANDARD OF REVIEW

¶28    North Ridge challenges the district court's denial of its request for attorney fees, arguing that it was entitled to attorney fees because it was the prevailing party. "Whether the district court applied the correct legal standard is a question of law, which we review for correctness." *Wihongi v. Catania SFH LLC*, 2020 UT App 109, ¶ 7, 472 P.3d 308 (quotation simplified). "But whether a

party is the prevailing party in an action is a decision left to the sound discretion of the trial court and reviewed for an abuse of discretion." *Id.* (quotation simplified).

ANALYSIS

¶29 North Ridge challenges the district court's denial of its request for attorney fees on two primary fronts. First, North Ridge argues that the district court committed several "factual and legal" "input errors" that improperly altered the monetary amounts the court used as the baseline for its prevailing party determination. If those errors are corrected, North Ridge contends, it becomes clear that the court abused its discretion. Second, North Ridge argues that, even without the alleged input errors, the court still abused its discretion when it determined that neither party prevailed.

¶30 We first address the input question, and we conclude that the court did commit one key input error. Correcting that error, we then review the court's prevailing party determination.

A. Input Error[7]

¶31 When determining which party prevailed, our supreme court has "stressed the importance of looking at the amounts actually sought and then balancing them proportionally with what was recovered." *Jordan Constr., Inc. v. Federal Nat'l Mortgage Ass'n*, 2017 UT 28, ¶ 65, 408 P.3d 296 (quotation simplified). Consistent with this directive, the court below considered the amount that each party sought and recovered, as well as each

---

7. North Ridge contends that the alleged input errors were "threshold legal error[s]" to which we owe no deference. (Quoting *Northgate Village Dev. LC v. Orem City*, 2018 UT App 89, ¶ 14, 427 P.3d 391.) We need not decide whether this is true, however, because even under the more deferential standard, we would still conclude that the district court erred.

party's "success rate," i.e., the percentage of claimed damages that it recovered. The court viewed the relevant amounts as follows:

|  | Amount Sought | Amount Recovered | Success Rate |
|---|---|---|---|
| Maxwell | $251,308.38 | $65,223.71 | 26% |
| North Ridge | $36,621 | $16,750 | 46% |

¶32    On appeal, North Ridge argues that the court erred by using $65,223.71 as the amount that Maxwell recovered. We agree.

¶33    Below, the "parties stipulated that North Ridge ultimately owes Maxwell the amount of $65,333.00 for work performed under the Subcontract." This amount represented (1) an $18,537.40 final payment that North Ridge was withholding because Maxwell would not sign a pay application and (2) a $46,795.60 retainage that the city was withholding.[8]

¶34    In its findings of fact at the close of the bench trial, the court determined that "North Ridge breached paragraph 2.1 of the Subcontract with respect to the $18,537.40 due and owing to Maxwell." And in the accompanying order, the court awarded Maxwell "judgment in the amount of $18,537.40." The final judgment likewise "awarded judgment" to Maxwell "in the amount of $18,537.40."

¶35    North Ridge does not contest that it owes Maxwell $18,537.40. Rather, its point of contention has to do with whether the remaining $46,795.60 should have been included in Maxwell's recovery for purposes of the attorney fees calculation. On this, North Ridge correctly points out that the court never concluded that North Ridge had breached the subcontract by not paying the

---

8. There is a $109.29 difference between the amount the court used as Maxwell's recovery ($65,223.71) and the amount that the parties stipulated North Ridge ultimately owed to Maxwell ($65,333). Neither party has argued that the difference is significant or relevant, so we don't consider it further.

$46,795.60. Instead, as noted, that money was being withheld by the city, and as also noted, North Ridge's subcontract with Maxwell provided that North Ridge's "actual receipt of payment" from the city was "an express condition precedent to [North Ridge's] payment obligation to [Maxwell]." Thus, this portion of the $65,223.71 had not yet become due by the time of Maxwell's suit, and it wouldn't become due until the city released the retainage funds to North Ridge. This is presumably why the court's final judgment did not ultimately include that amount in its award.

¶36 Because of this, we agree with North Ridge that the court erred by including the $46,795.60 in its assessment of what Maxwell "recovered." *See Jordan Constr.*, 2017 UT 28, ¶ 65 (quotation simplified). Although past Utah cases have not explicitly defined the term "recovered" in this specific context, the most relevant authority suggests that the term refers to the amount that the district court awarded in the judgment in the case. *See, e.g.*, *Olsen v. Lund*, 2010 UT App 353, ¶ 3, 246 P.3d 521 (equating the "awarded damages" with the amount that the party "recovered"). This understanding also comports with the term's typical legal usage. *See Recover*, Black's Law Dictionary (11th ed. 2019) (defining "recover" as "obtain[ing] (a judgment) in one's favor"). And this makes sense. If the attorney fees question turns on a determination of which party "prevailed," and if that determination turns on a comparative analysis of how much each party obtained from the other as a result of the suit, it would make little sense to consider amounts that were not awarded pursuant to the judgment itself.

¶37 Here, the district court determined that North Ridge breached the subcontract by not paying Maxwell $18,537.40, and it accordingly awarded Maxwell a judgment of $18,537.40. Thus, for the purposes of this attorney fees analysis, the court also should have concluded that Maxwell "recovered" only $18,537.40—not the $65,223.71 that it instead used in its calculations.

¶38 Maxwell pushes back, however, contending that the district court "rightfully used $65,223.71 as the amount recovered because that amount was never paid and still has not been paid." And to be sure, the parties did "stipulate[] that North Ridge ultimately owes Maxwell the amount of $65,333.00." But again, the court only determined that North Ridge breached the subcontract by not paying $18,537.40 of that $65,333, and it only awarded judgment to Maxwell in the amount of $18,537.40. The court did not determine that North Ridge breached the subcontract by withholding the retainage, and the retainage was not reflected in the court's judgment. For purposes of the prevailing party analysis, the court should not have included amounts that were not awarded to Maxwell. As a result, $46,795.60 should not have been included in Maxwell's recovery.

¶39 Because of this error, we agree with North Ridge that the court should not have used $65,223.71 as Maxwell's recovery. Instead, Maxwell only recovered $18,537.40. And if the court had used the correct recovery amount, the relevant amounts and corresponding success rates would have instead been:

|  | Amount Sought | Amount Recovered | Success Rate |
|---|---|---|---|
| Maxwell | $251,308.38 | $18,537.40 | 7% |
| North Ridge | $36,621 | $16,750 | 46% |

As this chart indicates, the court's input error was therefore significant because it incorrectly raised Maxwell's success rate by nineteen percentage points.[9]

---

9. North Ridge asserts two additional input errors. We need not address them, however, because our resolution of this particular input error is enough to support our conclusion that the district court abused its discretion when it determined that neither party prevailed.

B.      Prevailing Party Analysis

¶40      With the correct amounts in mind, we turn to the district court's prevailing party analysis.

¶41      Courts should use "common sense" when determining which party, if any, prevailed. *A.K. & R. Whipple Plumbing & Heating v. Guy*, 2004 UT 47, ¶ 11, 94 P.3d 270. The analysis should be "flexible and reasoned" and not guided by "rigid" rules. *Id.* ¶ 26; *see also Express Recovery Services Inc. v. Olson*, 2017 UT App 71, ¶ 10, 397 P.3d 792.

¶42      In some past cases, courts focused heavily on which party won the "net judgment." *See, e.g.*, *Mountain States Broad. Co. v. Neale*, 783 P.2d 551, 557 (Utah Ct. App. 1989). But our supreme court has more recently "cautioned against considering only the net judgment," instead "stress[ing] the importance of looking at the amounts actually sought and then balancing them proportionally with what was recovered." *Jordan Constr.*, 2017 UT 28, ¶ 65 (quotation simplified). And we have likewise stated that the "focus should be on which party had attained a comparative victory, considering what a total victory would have meant for each party and what a true draw would look like." *Olsen*, 2010 UT App 353, ¶ 8 (quotation simplified); *see also Express Recovery Services*, 2017 UT App 71, ¶ 10. "Comparative victory—not necessarily a shutout—is all that is required."[10] *Olsen*, 2010 UT App 353, ¶ 12.

---

10. The Utah Supreme Court has articulated a list of what "[a]ppropriate considerations for the trial court would include" in a prevailing party analysis. *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119 (explaining that courts might consider, for example, "the number of claims, counterclaims, cross-claims, etc., brought by the parties," as well as "the dollar amounts attached to and awarded in connection with the various claims"). But the supreme court has not always explicitly invoked that list, *see, e.g.*,

(continued…)

¶43 Because this analysis "depends, to a large measure, on the context of each case," "it is appropriate to leave this determination to the sound discretion of the [district] court." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119. But even so, a district court's discretion is not unlimited. Indeed, we have reversed prevailing party determinations in several cases in which we concluded that, based on the circumstances at issue, there was an abuse of discretion. *See, e.g.*, *Express Recovery Services*, 2017 UT App 71, ¶ 19; *Olsen*, 2010 UT App 353, ¶¶ 14–15; *Mountain States Broad. Co.*, 783 P.2d at 556–69.

¶44 In this case, the district court first recognized that Maxwell won "the net judgment" because "the $18,537.40 awarded under Maxwell's breach of contract claim is greater than the $16,750 awarded to North Ridge." The court then acknowledged that "[w]hen viewed through the lens of which party more closely achieved a total victory, North Ridge is the comparative victor, inasmuch as it defeated a higher percentage of the opposing party's claims and recovered a higher percentage of its own claims." But the court still concluded that "neither party" was ultimately "the comparative victor," so it "declare[d] a draw." This was because "Maxwell recovered a greater absolute amount, but a lower percentage of its initial demand," as well as because "North Ridge defeated the majority of Maxwell's claims, but recovered only half of its own claimed damages, and ultimately recovered fewer dollars than Maxwell." The court also pointed out that even though North Ridge "defeated a higher percentage

---

*Jordan Constr., Inc. v. Federal Nat'l Mortgage Ass'n*, 2017 UT 28, ¶¶ 65–70, 408 P.3d 296, and we understand it to be a helpful tool, not a required list that courts must mechanically apply. Moreover, although the parties' arguments and the court's analysis in this case both included consideration of some of the factors, the parties and the court did not ultimately focus on that list either. We accordingly review the district court's analysis without explicitly applying the list of considerations set forth in *R.T. Nielson*.

of the opposing party's claims," "the percentage differences are not extreme."

¶45  We agree with the court's assessments that Maxwell won the net judgment and that North Ridge "defeated a higher percentage of the opposing party's claims and recovered a higher percentage of its own claims." But we disagree with the court's ultimate conclusion that "neither party is the comparative victor." After reviewing the amounts involved and how the litigation unfolded, we instead conclude that North Ridge was the comparative victor and that the district court abused its discretion by concluding otherwise.

¶46  A central component of the district court's determination was that the difference between 26% (Maxwell's success rate) and 46% (North Ridge's success rate) was "not extreme." Even assuming that's true, 26% was not the accurate number to use for Maxwell's success rate. As explained above, Maxwell was successful on only 7% of its claimed damages. And we regard the difference between 7% and 46% as being significant—Maxwell recovered less than one tenth of its claimed damages, while North Ridge recovered almost half of its claimed damages.[11]

---

11. With respect to these percentages and the related concept of the parties' respective success rates, Maxwell contends that North Ridge cannot be the prevailing party because its success rate was not comparable to that of the prevailing party in *Olsen v. Lund*, 2010 UT App 353, 246 P.3d 521. We disagree with Maxwell's account of *Olsen* and the import of that case to our analysis here.

In *Olsen*, a home buyer sued the seller for $23,831.98 but recovered only $754.77. *See id.* ¶ 3. The buyer accordingly had a success rate of 3%, while the seller had a success rate of 97%. *See id.* ¶ 13. When the seller moved for attorney fees, the district court declared a draw, but we reversed on appeal, concluding that the seller was the prevailing party. *See id.* ¶ 17. Maxwell argues that North Ridge's success rate of 46% is so distant from the seller's

(continued…)

¶47 The import of all this becomes even more pronounced when the "amounts actually sought" are balanced "proportionally with what was recovered." *Jordan Constr.*, 2017 UT 28, ¶ 65 (quotation simplified); *cf. Olsen*, 2010 UT App 353, ¶ 7 (recognizing that a "party that makes an outrageous claim and then receives only a fraction of what it demanded—though the net judgment winner—will not likely be deemed the successful party" (quotation simplified)).

¶48 Again, Maxwell sought $251,308.38 in damages, but it only recovered $18,537.40. By contrast, North Ridge sought $36,621, and it recovered $16,750—only $1,787.40 less than Maxwell. As illustrated in the chart below, this means that while the parties recovered similar amounts, Maxwell failed to recover on a much higher percentage of its claims:

---

success rate of 97% that the district court here could not have abused its discretion by declaring a draw. But contrary to its apparent suggestion, *Olsen* didn't purport to establish a baseline rule under which anything short of the percentages involved in that case must categorically fail.

In any event, Maxwell also overlooks a key difference between this case and *Olsen*: unlike the seller in *Olsen*, North Ridge counterclaimed in this case. So when we state that North Ridge had a success rate of 46%, we are referring to the amount it recovered on its *own* claims. Conversely, the 97% in *Olsen* represented only the amount of *the other party's* damages that the seller defeated. *See id.* ¶¶ 3, 13. Here, if we considered only Maxwell's claims, North Ridge would have a 93% success rate because Maxwell succeeded on only 7% of its claims—percentages that are similar to those that led us to reverse in *Olsen*. *See id.* ¶ 13. Our reasoning in *Olsen* therefore does not preclude us from concluding that the court in this case abused its discretion.



Thus, while Maxwell made a large demand, it ultimately recovered "only a fraction" of that after trial. *Olsen*, 2010 UT App 353, ¶ 7 (quotation simplified). This strongly suggests that the court abused its discretion by declaring a draw.

¶49 Further, the "context of the lawsuit considered as a whole" sheds additional light on the parties' relative success. *See R.T. Nielson*, 2002 UT 11, ¶ 25. Before presenting its case, North Ridge had several victories that allowed it to reduce Maxwell's claimed damages. For example, Maxwell abandoned $40,211 of its damages in response to North Ridge's motions in limine. Likewise, at the close of Maxwell's case at trial, North Ridge filed a rule 52(e) motion, and in ruling on that motion, the district court dismissed two of Maxwell's claims in their entirety and dismissed a third in part. By contrast, Maxwell's successes were underwhelming. Although the court only awarded North Ridge $16,750 of its initially claimed $36,621, nothing in the record suggests that Maxwell was responsible for North Ridge not recovering the full $36,621. Rather, North Ridge elected to seek liquidated damages, thus voluntarily reducing its claimed damages from the original $36,621 to $16,750. So Maxwell cannot claim total responsibility for North Ridge's failure to receive the amount it initially claimed. And with regard to the amount that

Maxwell recovered, North Ridge never disputed that it owed Maxwell $18,537.40; rather, North Ridge contended that it was permitted to withhold that amount until Maxwell signed the final pay application. Although Maxwell had to file suit to recover this money without signing the pay application, what it ultimately recovered was an amount that North Ridge had agreed all along that Maxwell would eventually receive.

¶50 North Ridge's comparative victory becomes even more clear when "considering what a total victory would have meant for each party and what a true draw would look like." *Olsen*, 2010 UT App 353, ¶ 8 (quotation simplified). Here, a total victory for Maxwell would have been recovering $251,308.38 with North Ridge recovering nothing. And a total victory for North Ridge would have been recovering $36,621 with Maxwell recovering nothing. A "true draw"—dividing the judgment equally—would have been a $107,343.69 net judgment in Maxwell's favor. *See id.* As the number line below indicates, the actual net judgment of $1,787.40 was far from a draw, and North Ridge was much closer to a "total victory":



¶51 Thus, while it's true that North Ridge didn't achieve a "shutout," it's also true that it didn't need a shutout to be entitled to its attorney fees. *Id.* ¶ 12. Again, what it needed was a "[c]omparative victory." *Id.* After considering the pronounced disparities between what each side sought and what each side ultimately recovered, we think it's clear that North Ridge was

indeed the prevailing party and that the district court exceeded its discretion by concluding otherwise.[12]

## C. Attorney Fees on Appeal

¶52 North Ridge also requests its attorney fees incurred on appeal. "A provision for payment of attorney fees in a contract includes attorney fees incurred by the prevailing party on appeal as well as at trial, if the action is brought to enforce the contract." *Id.* ¶ 16 (quotation simplified). We accordingly award North Ridge its attorney fees reasonably incurred on appeal. *See generally Equitable Life & Cas. Ins. Co. v. Ross*, 849 P.2d 1187, 1194 (Utah Ct. App. 1993) (explaining that even though contractual attorney fees are "a matter of legal right," they "must be reasonable and supported by adequate evidence").

## CONCLUSION

¶53 After considering the amount that each party sought and was then awarded, as well as how close each party was to a total victory, we conclude that the district court abused its discretion by declaring a draw. North Ridge was the comparative victor, and it is thus entitled to its reasonable attorney fees. We accordingly reverse, and we also remand with instructions for the district court to determine the reasonable attorney fees that North Ridge incurred below and on appeal.

───────────

12. We note that both this number line and the bar graph provided above are modeled after charts that North Ridge provided in its briefing. We thank counsel for this helpful assistance.